EASTERLY, RESPONDENT, *v.* JACKSON, APPELLANT.

(No. 1,758.)

(Submitted January 12, 1904. Decided February 1, 1904.)

*Real Estate — Vendor and Purchaser — Oral Agreement— Validity—Merger in Written Contract — Consideration— Partial Payment.*

1. Where one who purchased land from joint owners thereof agreed to pay one of them a sum in addition to that named in the written contract of sale, to induce him to execute the contract, such agreement, being nullified by the written contract, does not constitute any consideration for a subsequent written agreement whereby the purchaser agreed to pay such sum.

2. Where joint owners of land entered into a contract for its sale, agreeing to execute deeds in escrow on the first payment being made, the refusal of one of them to sign the deeds on such payment was not a valid consideration for the purchaser's promise to pay him an additional sum.

3. Where joint owners of land made a contract to sell and deed it to the purchaser or persons whom he might designate, an oral agreement by the purchaser to pay an additional sum to one of the vendors cannot be made

the basis of a recovery against the purchaser as an agreement for sharing the profits of a resale of the land, unless it is resold for a higher price than that which was to be paid under the original contract.

4. Where a written instrument is sued on as an original and complete contract, not as an admission of a balance due on any other contract, and the complaint alleges that no part of the sum due under it has been paid, a payment which the plaintiff admits·the defendant has made is no part of the amount expressed in the contract sued on, and hence it cannot be relied on to support a previous oral agreement as the basis and consideration of the written contract.

*Appeal from District Court, Broadwater County; W. L. Holloway, Judge.*

ACTION by Allen M. Easterly against James E. Jackson. From a judgment in favor of plaintiff and an order denying a new trial, defendant appeals. Reversed.

*Messrs Walsh & Newman,* and *Mr. Milton S. Gunn,* for Appellant.

At the request of the defendant, the court gave the jury instruction No. 7. In this instruction, so given by request, the jury was told that the money must be actually paid, or something else of value received by the creditors, under an express agreement to accept it as payment, and if a person gave his note, check or draft, it did not constitute payment unless there was an express agreement that it should be received as payment and in satisfaction of the debt; and that the burden of proof was upon the plaintiff to show, by a preponderance of evidence, that the $12,500 was paid, and that if not paid in money, the check or draft received was received under an express agreement to accept the same as payment in satisfaction of the debt. This instruction correctly states the law, and is supported by innumerable authorities. (*Millbury* v. *Hutzborg,* 55 N. Y. S. 743; *Starling* v. *Wyatt,* 27 S. 526; *Atlas S. S. Co.* v. *Columbia Land Co.,* 102 Fed. 358; *Cushman* v. *I. L. & B. A. S. L. N.,* 32 S. E. 259; *Woodward* v. *Holmes,* 41 Atl. 72; *Dellapiazza* v. *Foley,* 44 Pac. 727; *People's Bank* v. *Gifford,* 79 N. W. 63; *Good* v. *Singleton,* 40 N. W. 359; *Bibb* v. *Snodgrass,* 11 S. 880; *Nash* v. *Meggett,* 61 N. W. 283; *Washington Slate Co.*

v. *Burdick,* 62 N. W. 285; *Barton* v. *Hunter,* 59 Mo. App. 610; *Johnson* v. *Barills,* 41 Pac. 656; *Hamill* v. *Bank,* 22 Pac. 438; *Comtoir Dep.* v. *Dresbach,* 20 Pac. 28; *Joycelyn* v. *Giese,* 36 Atl. 680; *Collins* v. *Bush,* 43 Atl. 378; *Estey* v. *Burbam,* 68 N. W. 290; *Estey* v. *United States,* 71 Fed. 228; *Tyner* v. *Stoops,* 71 Am. Dec. 341; *Stenhart* v. *Bank,* 29 Pac. 717.)

It matters not whether the plaintiff refused to deposit the deed in escrow, or sign the escrow agreement, until the contract set forth in the complaint was delivered to him. He was legally bound to execute the deed, and deposit it in escrow, according to the contract of December 14th. Refusing to do that which he was legally bound to do does not constitute a consideration and will not support a contract. (*Easterly Harvesting Mach. Co.* v. *Pringle,* 59 N. W. 804; Wharton on Contracts, Sec. 500; Clark on Contracts, p. 184; *Jones* v. *Risley,* 32 S. W. 1027; *Spencer* v. *McLean,* 50 N. E. 769; *Arend* v. *Smith,* 45 N. E. 872; *Weymer* v. *Overseers,* 104 Pa. 317; *Widmen* v. *Brown,* 83 Mich. 241; *Keffer* v. *Grayson,* 76 Va. 517; *Tucker* v. *Bartlett,* 85 Mo. 114; *Smith* v. *Phillips,* 77 Va. 548; *Phoenix* v. *Rink,* 110 Ill. 538; *Cobb* v. *Cowdrey,* 94 Am. Dec. 370.)

The alleged oral agreement to pay the $3,000 was superseded by the written agreement, which alone remains as the agreement of the parties. (Civil Code, Secs. 2186, 2204, 2281, 2185, 2342; *Jungerman* v. *Bovee,* 19 Cal. 355; *Goldman* v. *Davis,* 23 Cal. 256; *Nicholson* v. *Tarpcy,* 89 Cal. 617; *Beal* v. *Fisher,* 95 Cal. 568; *Bradford Mott Co.* v. *Joost,* 117 Cal. 211, 48 Pac. 1083; *Fisher* v. *Briscoe,* 10 Mont. 124.)

The contract is not to pay a certain sum upon a certain date, or upon the happening of a certain event; but to pay a certain sum out of and from another sum when received, and to be received from another person. All the authorities hold that, unless the money is actually received from the source mentioned in the contract, the contract cannot be enforced. (*Glyddon* v. *McKinstry,* 28 Ala. 408; *Wadlington* v. *Covert,* 51 Miss. 631; *Crowell* v. *Plant et al.,* 53 Mo. 145; *Kelley* v. *Bronson,* 26 Minn. 359; *Bagby* v. *Cohen et al.,* 50 Pac. 4;

*Mercantile Company* v. *Chapman,* 78 Mo. App. 616; *Pettus County* v. *Kingsbury,* 17 Mo. 479; *Snell* v. *Cheney,* 88 Ill. 258.)

*Messrs. Shober & Rasch,* for Respondent.

Cited: Civil Code, Secs. 2003, 2169, 2170; Code of Civil Procedure, Sec. 1080; 16 Ency. of Pl. & Pr. pages 208, 209; *Loring* v. *Allen,* 50 N. Y. Supp. 312; *Brew. Co.* v. *Fromme,* 54 N. Y. Supp. 833; *Gregory* v. *Hitchcock,* 63 N. Y. Supp. 975; *Boley* v. *Griswold,* 1 Mont. 558, 554; *Ming* v. *Truett,* 1 Mont. 327; *Knox* v. *Rossi,* 48 L. R. A. 305.

MR. COMMISSIONER POORMAN prepared the opinion for the court.

This is an appeal by defendant from a judgment entered on a verdict in favor of plaintiff and from an order overruling defendant's motion for a new trial.

The facts appearing in the record are, substantially: That on the 14th day of December, 1899, Allen M. Easterly (this plaintiff), James J. Mayne and Allen Easterly, Jr., agreed with James E. Jackson (this defendant) that for the sum of $75,000 they would sell and convey to Jackson, "or to such person or persons as he may designate," certain mining property. $7,500 of the purchase price was to be paid on or before December 31, 1899, $12,500 on or before August 15, 1900, and the remaining $55,000 on or before February 15, 1901. That upon the making of the first payment the defendant should have the possession of the property, with the privilege of working the same, except one tunnel. That he should deposit 25 per cent. of the smelter returns from all ore extracted as fast as the same was realized, for the benefit of grantors, which sums were to be deducted from the final payment. Deeds were to be deposited in escrow with the Union Bank & Trust Company of Helena. Time was made the essence of the contract, and forfeiture was to be the result of any violation of its terms.

It further appears that the real consideration which the owners were to receive for the property was $60,000, and that the remaining $15,000 was a profit to Jackson for his expenses and compensation in making the sale of the property. Jackson was to receive $2,500 from the first payment made, and all of the $12,500 payment due August 15, 1900. On December 29, 1899, the first payment of $7,500 was made, and $2,500 of the amount was turned over to Jackson, and deeds to the property were executed, and placed in the bank. The grantors then gave an order, addressed to the Union Bank & Trust Company, authorizing and requesting the bank "to pay to James E. Jackson, Agent, the sum of twelve thousand five hundred (12,500) dollars, being the second payment provided for (to be paid on or before August 15, 1900)." Thereafter, on August 8, 1900, Jackson gave his personal check for $12,500 to the cashier, payable to the bank, and presented the order of the said grantors for the payment to him of this amount. The bank accepted this check, with the sanction of Mayne, who was then present, indorsed it, "Pay to the order of James E. Jackson, Agent, without recourse," and handed it back to Jackson, who receipted on the order as follows, after the same had been acknowledged by Mayne: "Full receipt acknowledged. James E. Jackson, Agent." The bank then indorsed on the escrow agreement: "8—8, 1900. Rec'd $12,500. U. B. & T. Co. G. L. R." It further appears that this check was never presented for payment. These are substantially all of the facts, so far as they relate to the transactions, necessary to be considered at this time.

Plaintiff claims, however, that the instrument sued upon grew out of and is connected with these transactions. This instrument is as follows: "Helena, Mont., Dec. 29, 1899. Allen M. Easterly, Helena, Mont.—Dear Sir: I hereby agree and promise to pay you Twenty-five hundred dollars out of & from the sum of Twelve thousand five hundred (12,500) dollars for which yourself, James J. Mayne & A. Allen Easterly, Jr. have given me this day an order on the Union Bank & Trust

Co. Said sum to be paid on or before August 15th 1900 in accordance with terms of agreement made & entered into on Dec. 14 1899 between above named parties & myself. In case said payment of $12,500 is not made then this agreement is null and void. [50 cent Internal Rev. Stamp, Cancelled.] Yours truly, J. E. Jackson."

This instrument is attacked by defendant as being without consideration. To repel this attack, plaintiff testified that the actual consideration to be paid to the owners for the property was $60,000, which was to be divided between plaintiff, his two sons, and James J. Mayne—$15,000 each—but that plaintiff had a verbal agreement with defendant, entered into prior to the execution of the agreement to convey, to the effect that plaintiff was to receive $3,000 additional; that $500 of this amount was to be paid when the first payment was made on the contract of conveyance, and $2,500 when the second or August payment was made; that defendant did pay the $500, and that plaintiff refused to sign the escrow agreement and deeds until defendant executed and delivered to him the instrument sued upon. With reference to this verbal agreement the plaintiff testifies: "The conversation between Mr. Jackson and myself in regard to entering into this agreement of December 14th was that I would not part with my interest unless I got $3,000 more; that I had the largest interest, and I would not let it go for less than $18,000; and that I would sign no papers, the escrow agreement or deed, transferring that property, until I was secured by this contract."

The contract to convey was exected in a room at Blacker's Hotel at Radersburg. All the parties were present. The verbal contract, plaintiff says, was entered into on the same day, and immediately prior to the signing of the written contract to convey. Plaintiff says: "There was nothing said about that $3,000 in that room that day in the presence of Mr. Mayne." Again, plaintiff says, "My co-tenants did not know anything about this side deal I was making with Jackson." This $500 was paid to Easterly on December 29th, and, though Mayne

was present, he was not permitted to know anything about it; and Mayne says in his testimony that he did not know anything about this "side deal" until some time in August, 1900, and he further refers to it as "rake-off" and "boodling."

1. It appears from the undisputed testimony and the admissions of all the parties that Jackson was the common agent of all the owners for the purpose of effecting a sale of the property, although he was at the same time given the option to purchase it himself. This verbal contract between the plaintiff and this common agent, secretly entered into and purposely concealed, by which the plaintiff seeks to obtain an advantage over his partners with reference to the consideration to be paid for this mining property, trenches dangerously near to the forbidden ground of fraud, and of being void as against public policy.

This verbal contract, if a contract at all, under the provisions of Subdivision 5, Section 2185, of the Civil Code, related to the sale of land, and was superseded by the subsequent written agreement relating to the same matter, under Section 2186, Civil Code. (*Armington* v. *Stelle,* 27 Mont. 13, 69 Pac. 115, 94 Am. St. Rep. 811.) And this written agreement, when once entered into, could be altered by a contract in writing or by an executed oral agreement, and not otherwise. (Sections 2281, 2204, Civil Code; *Bradford Investment Co.* v. *Joost,* 117 Cal. 211, 48 Pac. 1083.) This oral agreement, being thus nullified by the subsequent written agreement, does not constitute any consideration whatever for the written instrument described in plaintiff's complaint. (*Fisher* v. *Briscoe,* 10 Mont. 124, 25 Pac. 30.) The contract to convey entered into on the 14th day of December, 1899, made it the duty of the plaintiff, as well as of all the other grantors thereto, to sign the deed to the property therein described, and to deposit the same in the bank in escrow. The refusal, therefore, of the plaintiff to sign this deed or escrow agreement until the defendant had executed the instrument described in the complaint, was not a valid consideration for any contract, for the reason that plaintiff was already

bound by his former agreement to execute these instruments. (*Abbott* v. *Doane, Jr.,* 34 L. R. A. 33, note.)

If this verbal agreement was only to the effect that the agent, Jackson, should share with the plaintiff, Easterly, the profits which Jackson made on the sale of the property, then it would be necessary for the plaintiff, in order to recover, to show that there was a sale of the property for some amount exceeding the $60,000; and no such evidence appears in the record.

There is no contention in this case that this agreement to convey, dated December 14, 1899, fails to state the actual intention of the parties, and that instrument was introduced in evidence by the plaintiff to sustain his case. The instrument set out in the complaint is sued upon as an original and complete contract, and is not presented as an admission by the defendant of a balance due on any other contract, either verbal or written. It was explained by evidence referring to the circumstances under which it was made and the matter to which it relates. Plaintiff insists that it was executed prior to the payment of the $500. The complaint contains a copy of the instrument, and then follows the allegation: "But defendant has not paid the same, nor any part thereof." The $500 was therefore not a part of the amount expressed in the contract sued upon, for plaintiff, in his testimony, admits this payment, and judgment is demanded for the full amount expressed in the instrument.

There is a conflict in the evidence as to whether this verbal contract for the $3,000 was made prior or subsequent to the execution of the written agreement to convey on December 14, 1899; also as to whether the $500 was paid prior or subsequent to the execution of the instrument described in the complaint. The order in which these agreements were made, or the time of this payment with reference thereto, however, makes no difference in the legal question involved as to the consideration for the instrument constituting the basis of plaintiff's cause of action. In considering this question we have taken only the admissions of the plaintiff as the same appear in his evidence.

It appearing from the record that there was no consideration whatever to support the instrument on which the action is

based, we recommend that the judgment and order appealed from be reversed, and the case remanded for a new trial.

PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment and order appealed from are reversed, and the case is remanded for a new trial.

MR. JUSTICE HOLLOWAY, being disqualified, takes no part in this decision.

