ARMINGTON ET AL., RESPONDENTS, *v.* STELLE ET AL., APPELLANTS.

(No. 1,765.)

(Submitted May 8, 1902.  Decided June 13, 1902.)

*Written Lease—Extension of Time—Understanding of Lessees —Contemporaneous Oral Agreement—Evidence — Admissibility—Subsequent Agreement—Consideration.*

1.  Testimony by lessees that they would not have signed the lease but for an understanding that the time would be extended was not admissible to show a contemporaneous oral agreement to extend, because showing mere mental reservations not disclosed to the lessor, and not in any wise affecting him.
2.  Under Civil Code, Sec. 2186, providing that the execution of a contract in writing, whether required to be written or not, supersedes all oral negotiations or stipulations which preceded or accompanied its execution, and Code of Civil Procedure, Sec. 3132, providing that, between the parties to a written agreement, there can be no evidence of its terms, other than the writing itself, except where a mistake is put in issue, its validity disputed, or evidence tending to explain an intrinsic ambiguity or establish illegality or fraud offered, evidence of a contemporaneous agreement between the

parties to a written sublease of a mining claim, that in case the sublessors should buy the property the lease would be extended, was inadmissible.

3.    Under Civil Code, Sec. 2281, providing that a contract in writing may be altered by a contract in writing or by an executed oral agreement, and not otherwise, a subsequent oral agreement between the parties to a written sublease of a mining claim that in case the sublessors should buy the property, the lease would be extended was void, being a mere executory agreement, without consideration.

*Appeal from District Court, Cascade County; J. B. Leslie, Judge.*

ACTION by J. T. Armington, P. M. Collins, Lavina A. Collins and Leonie E. Barker against H. L. Stelle and Dan McKinnon. From an order granting a temporary injunction, defendants appeal. Affirmed.

*Mr. A. C. Gormley,* and *Messrs. Word & Word,* for Appellants.

1.    Parol evidence is admissible to establish a contemporaneous oral agreement which induced the execution of a written contract, although it may change, vary or reform the instrument. (*Thomas et al.* v. *Loose et al.,* 114 Pa. St. 35, 6 Atl. 326; *Cullmans* v. *Lindsay,* 114 Pa. St. 166, 6 Atl. 332; *Walker* v. *France,* 112 Pa. St. 203, 5 Atl. 208; *Godkin* v. *Monahan,* 83 Fed. 116; *Ayers* v. *R. W. Bell Mfg. Co.,* 147 Mass. 46; *Hazard* v. *Long,* 10 Cush. 267; *Erskine* v. *Adeane,* L. R. Chanc. App. 756; *Morgan* v. *Griffith,* L. R. 6 Exch. 70; *Eighmie* v. *Taylor,* 98 N. Y. 288; *Welz* v. *Rhodens,* 87 Ind. 1, s. c. 44 Am. Rep. 747; *School District Warsaw Twp.* v. *Sidney School Furniture Co.* (Pa.), 18 Atl. 606; *Thudium* v. *Yost* (Pa.), 11 Atl. 436; *Bown* v. *Morange,* 108 Pa. St. 69; *Michels* v. *Olmstead,* 14 Fed. 219; *Oregonian Railway Co.* v. *Wright,* 10 Ore. 162; *Durkin* v. *Cobleigh* (Mass.), 17 L. R. A. 270-275 and notes; *Clenighan* v. *McFarland,* 11 N. Y. S. 719; *Ferguson* v. *Rafferty* (Pa.), 6 L. R. A. 33-48 and notes; *McCormack, etc. Co.* v. *Nicholson,* 17 Pa. Super. Ct. 188; *King* v. *Dahl,* 84 N. W. 737.)

2.    A parol agreement made subsequent to the execution of a written lease, and for the extension of such written lease, is

valid.    The provision of the Code that influenced the lower court in its decision, as well as all other provisions of the Code bearing on this question, are simply declaratory of the common law rule, and this rule has been considered and applied in a number of decisions.    As particularly in point in the case at bar, we refer the court to the following:  *Street R. R. Co. v. Morrison,* 160 Ill. 288, 294; *Hugh Martin* v. *Topliff,* 88 Ill. App. 362; *Schweikert v. Seavey,* 62 Pac. 600.

We cite the following additional authorities in support of the validity of this subsequent parol agreement:   1 Greenleaf on Evidence, Sec. 304; 2 Pomeroy's Eq. Jur. Sec. 863; *Smith* v. *Lilley,* 20 Atl. 227 (R. I.); *Warren* v. *Mayer Mfg. Co.* (Mo.), 61 S. W. 646; *Wilson* v. *McClenny,* 13 So. 873; *Grace* v. *Lynch et al.,* 49 N. W. 751; *Evers* v. *Shumaker,* 57 Mo. App. 454; *Thomas* v. *Barnes,* 31 N. E. 683 (Mass.); *Emerson* v. *Slater,* 63 U. S. 28, 16 L. Ed. 360; *Grandin* v. *United States,* 89 U. S. 496, 22 L. Ed. 858.

*Mr. Fletcher Maddox,* for Respondents.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought by plaintiffs to recover from defendants possession of a portion of the Ripple quartz lode mining claim, situate in Cascade county.    The portion of the claim in controversy is described as the "south or southerly 300 feet of the Ripple quartz lode mining claim;" and it is alleged that the defendants, on or about October 10, 1901, the plaintiffs being then the owners and entitled to the possession thereof, wrongfully and unlawfully entered upon the premises, and engaged in mining and removing valuable ores therefrom, to the irreparable damage of the plaintiffs.    Equitable relief is also sought by way of injunction to perpetually restrain further trespasses by the defendants.    Upon the filing of the complaint the district court made an order requiring the defendants to show cause why they should not also be restrained from mining and removing ores pending the final determination of the

cause. The defendants answered, admitting plaintiffs' title to the premises as alleged, but alleging that they themselves were lawfully and rightfully in possession under a lease from the plaintiffs, the term of which had not expired at the time the action was commenced. After a hearing the court ordered a temporary injunction to issue. The defendants have appealed.

The action was commenced on November 16, 1901. It appears from the evidence submitted that on February 20, 1901, the plaintiffs, being the owners of an undivided one-half interest in the claim, also held a lease of the other undivided one-half interest from one Briggs, the owner of it, with an option to purchase it on or before October 10, 1901, the date at which the term of their lease expired. The plaintiffs leased to the defendants and two others the portion of the claim in controversy under a written contract for a term beginning on February 20, 1901, and ending on October 10, thus making the two leases expire on the same date. The defendants and their co-lessees desired a lease for a year, but the plaintiffs refused to extend the term beyond October 10 for the reason that it was then uncertain whether the Briggs interest would be paid for, and they did not care to bind themselves for that interest. It being admitted that the Briggs interest had been purchased by plaintiffs under their option, the defendants undertook to show that their lease was good to the end of the year by virtue of an oral understanding with the plaintiffs had on and subsequent to February 20. John Joki, one of the defendants' co-lessees, testified that plaintiff J. C. E. Barker, who represented himself and the other plaintiffs, told him at the time the lease was signed that if plaintiffs took up the Briggs interest under their option, and the lessees made no money out of their lease, they could have an extension, in order that they might make some money. B. O. Kempfer, who was present at the time, stated that, after reading over the lease, Barker said to Joki: "You understand this lease calls for October 10. Well, you are to have a written agreement holding the lease for one year. October 10 is the day our bond expires on Briggs' half interest in this claim, and your lease is to run for one year in case we

take up that bond." Defendant Stelle stated: "About February 20, 1901, Joki came to me and asked me if I wanted to take a lease. I asked him how long the lease would be, and he said the written lease was only made out for six months, but Barker had told him, if he raised the bond on Briggs' interest, our lease would run for one year from February 20, 1901. He had Barker put my name and McKinnon's in the lease, and after that I signed the lease." He stated further that in April he talked with Barker, and was told by him that the lease was good for a year if the Briggs interest was purchased. He testified that a short time subsequently he also had a talk with Armington, who told him that McKinnon and Joki had been after him for a written extension, and then said: "I can't give it to them. If we take up the bond, which we expect to, your time will be good up to February 20, 1902." McKinnon testified that he talked with Barker and Armington about the end of March, 1901, when Barker said: "We couldn't give papers on Briggs' interest, for we haven't got it after October 10 if we don't take up the bond. We could only give what we have ourselves. There is no doubt but what we will take up this bond, and, after we do, we will give you a written extension of the lease." Other witnesses testified to the same effect as the foregoing. Both defendants stated that they would not have entered into the lease but for the understanding that it would be good for a year if the bond should be taken up. The other lessees abandoned the lease during the time, and hence are not parties to this action.

Objection was made to the introduction of the testimony of Joki and other witnesses on the ground that it was an attempt to show by oral evidence an extension of the written lease, and it was therefore incompetent, as in violation of the provisions of Section 2281 of the Civil Code. The court admitted the evidence, reserving a ruling upon the objection until the close of the hearing. When the hearing was concluded the evidence was excluded from the record upon the ground assigned in the objection. The defendants excepted. They now contend that the evidence was admissible either (1) as tending to establish

a contemporaneous agreement which induced the execution of the written contract, or (2) as tending to establish an oral agreement made subsequent to the execution of the written lease, whereby the term stipulated for therein was extended to the end of the year.

1. Upon the first branch of this contention the plaintiffs insist that the case falls clearly within the rule declared by Section 2186 of the Civil Code, which is as follows: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." They also cite and rely upon Section 3132 of the Code of Civil Procedure, which provides that: "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases: (1) Where a mistake or imperfection of the writing is put in issue by the pleadings. (2) Where the validity of the agreement is the fact in dispute. * * *" This section also provides that evidence shall not be excluded which tends to explain an extrinsic ambiguity in the writing, or to establish illegality or fraud.

The statement made by Stelle in the conversation between himself and Joki was clearly incompetent as hearsay. Equally as objectionable, it would seem, was the statement by both the defendants that they would not have signed the lease but for the understanding that it would be good for a year in case the Briggs interest should be purchased. Even if everything that was said and done at the time the lease was executed by the defendants were admissible, as defendants contend, for the purpose of showing what the contract actually was, the unexpressed motive or mental reservation entertained by the defendants could not aid the court in arriving at a correct conclusion, nor could the defendants be permitted to testify to it in order to modify or add to the express words of their contract. What-

ever may have been the motive which prompted them to sign the lease, so long as such motive was not disclosed to Barker, who represented the plaintiffs, as the inducing cause of their signing the contract, the plaintiffs could not be bound by it. It is only the acts done and words spoken during the progress of the negotiations to which the court may look, and upon which it may base an inference as to what was in fact the agreement of the parties.

But passing these features of the evidence, and taking it all together, does the case fall within the rule declared by these statutory provisions? We think it does. The averment of the answer is that the defendants were in possession under a lease authorizing them to mine upon the premises until February 20, 1902. There is no allegation that there was any mistake in the terms of the contract. The writing itself in evidence limits the term unequivocally to October 10, 1901. To admit the evidence and give it the force contended for by the defendants would be to permit them to insert in the written instrument by oral evidence an additional agreement based upon a condition upon the happening of which the term would be extended for a period of four months. The statutory provisions cited are but declaratory of the common-law rule (1 Greenl. Ev. Sec. 275), and recognize all the exceptions for which it provides. Among these is the case in which evidence may be received of the existence of an independent oral agreement not inconsistent with the stipulations of the written contract, and in respect of which the writing does not speak, but not to contradict, vary, add to, or qualify the absolute terms of the written contract. In such a case the independent oral agreement must have been upon some collateral matter, and must have operated as an inducement to the complaining party to enter into the agreement, whereas in the absence of it he would not have done so. To deny the admission of evidence in such a case, if relevant to the issues made by the pleadings, would be to allow one of the parties to induce another to enter into the engagement under false representations, and to aid him to enforce it against his adversary notwithstanding the fraud prac-

ticed upon him, by holding out to him the fraudulent induce-
ment. We recognize this principle, and believe it to be in full
accord not only with the spirit of the statute, but also with ad-
judged cases. (*Thomas* v. *Scutt,* 127 N. Y. 133, 27 N. E.
961; *Naumberg* v. *Young,* 44 N. J. Law, 331, 43 Am. Rep.
380; *Hei* v. *Heller,* 53 Wis. 415, 10 N. W. 620;*Specht* v.
*Howard,* 83 U. S. 564, 21 L. Ed. 348; *Forsythe* v. *Kimball,*
91 U. S. 291, 23 L. Ed. 352; *Seitz* v. *Bremers' Refrigerating
Machine Co.,* 141 U. S. 510, 12 Sup. Ct. 46, 35 L. Ed. 837;
*Van Winkle* v. *Crowell,* 146 U. S. 42, 13 Sup. Ct. 18, 36 L. Ed.
880; *Cliver* v. *Heil,* 95 Wis. 364, 70 N.W. 346; *Flynn* v. *Bour-
neuf,* 143 Mass. 277, 9 N. E. 650, 58 Am. Rep. 135; *Eighmie*
v. *Taylor,* 98 N. Y. 288; *Beall* v. *Fisher,* 95 Cal. 568, 30 Pac.
773; *Bradford Investment Co.* v. *Joost,* 117 Cal. 204, 48 Pac.
1083.) This principle, however, does not apply to a case in
which the oral promise relates directly to the subject of the
contract, even though the claim be that the complaining party
signed the instrument in reliance upon such promise. (*Fisher*
v. *Briscoe,* 10 Mont. 124, 25 Pac. 30; *Gillett* v. *Clark,* 6 Mont.
190, 9 Pac. 823; *Nelson* v. *Spears,* 16 Mont. 351, 40 Pac. 786.)
"Where there is no fraud or mistake in the preparation of the
instrument, and it appears that the party signing understood
its language and purport, it cannot be reformed on the ground
that he signed upon the faith of a contemporaneous oral prom-
ise which was not kept, nor may such promise be received in
evidence to control the written contract." (*Sanford* v. *Gates,
Townsend & Co.,* 21 Mont. 277, 53 Pac. 749.) It is well said
in *Naumberg* v. *Young, supra,* "that, where the written con-
tract purports on its face to be a memorial of the transaction,
it supersedes all prior negotiations and agreements, and that
oral testimony will not be admitted of prior or contemporaneous
promises on a subject which is so closely connected with the
principal transaction, with respect to which the parties are
contracting, as to be part and parcel of the transaction itself,
without the adjustment of which the parties cannot be con-
sidered as having finished their negotiations and finally con-
cluded a contract." Under the evidence in question, giving it

all the force which is claimed for it, the alleged oral agreement had reference not to an independent collateral matter, but to the very subject-matter of the written lease, namely, the length of the term specified therein. It therefore had to do with the very essence of the contract itself; and it is impossible to admit it, and give it the import contended for by the plaintiffs, without allowing it to substitute an entirely new contract for the old one, and to adjudge the rights of the respective parties thereon. It presents a case, therefore, which not only does not fall under any one of the exceptions to the rule, but is in direct violation of it. Furthermore, we do not think the evidence tends to establish any agreement whatever which operated as an inducement to the defendants to sign the lease. Giving it its utmost force, it does not establish any agreement whatever. The plaintiffs did no more than make a promise of what they would do under certain circumstances which might arise in the future. The condition involved no new or different consideration. Nor did the defendants sign the lease upon the express, or even implied, condition that the alleged promise was to be made good to them.

2. The action of the court in excluding the evidence upon the objection as made was also correct. Section 2281 of the Civil Code provides, "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." The principle embodied in this provision applies to all kinds of contracts in writing, whether they are required by law to be in writing or not. The purpose of the section is the same as that of the rule contained in the other provisions which we have been considering. It is, however, a distinct departure from the common-law rule, which permitted parties, at their pleasure, to alter by oral agreement, whether executed or executory, any contract which was not required to be evidenced by a writing. The only exception recognized is the case in which the subsequent oral agreement has been executed by one or both of the parties. In such case the agreement, as altered or modified, is deemed to have been substituted

for the written one, which then ceases to be the only evidence of the engagement of the parties.

The excluded evidence does not, at most, tend to establish more than a mere executory agreement to so change the terms of the written agreement as to substitute another date for the one written therein, and to extend the life of it for four months. No consideration passed from the defendants to the plaintiffs, by virtue of which the promise became a binding obligation. The alleged subsesquent agreement was therefore within the prohibition of the statute, and consequently void. The evidence offered to show it was incompetent, and was properly excluded.

Let the order be affirmed.

*Affirmed.*

MR. JUSTICE PIGOTT: I concur in the order of affirmance.

MR. JUSTICE MILBURN: I concur.

Rehearing denied July 9, 1902.