KELLY, APPELLANT, *v.* ELLIS ET AL., RESPONDENTS.

(No. 2,709.)

(Submitted October 29, 1909.  Decided November 12, 1909.)

[104 Pac. 873.]

*Deceit—Contracts in Writing Supersede Oral Negotiations— Exception to Rule—Pleadings—Complaint—Insufficiency.*

Contracts in Writing Supersede Oral Negotiations—Exception to Rule.
   1.  A contract in writing supersedes all the prior or contemporaneous oral negotiations and stipulations relating to the subject matter of the agreement between the contracting parties; and therefore a party to it will not be heard to complain that there were other stipulations, unless they pertain to some collateral matter which operated as an inducement to his entering into the principal agreement.

Same—Complaint—Insufficiency.
   2.  *Held,* under the rule above, that plaintiff's complaint, in an action for damages for deceit, alleging, in substance, that he had entered into an oral contract the provisions of which were subsequently reduced to writing, to sell, and sold, to defendant company his sheep ranch, etc.; that in the oral negotiations ending in the sale it was understood and agreed that after such sale defendant would make him manager of its sheep business; that the memorandum of sale did not contain any reference to his employment as manager, but that upon assurance by the president of defendant that this provision of the oral agreement would be carried out, he signed same; that such promise was the *"most important condition of the agreement,"* and that but for such promise he would not have sold his property to defendant, did not state a cause of action and that a demurrer thereto was properly sustained.

*Appeal from District Court, Sweet Grass County; Frank Henry, Judge.*

ACTION by J. N. Kelly against W. Dixon Ellis and the Briggs & Ellis Company. From a judgment for defendants, plaintiff appeals. Affirmed.

*Messrs. Hartman & Hartman,* and *Mr. H. J. Miller,* filed a brief in behalf of Appellant; *Mr. Walter Hartman* argued the cause orally.

That the defendants willfully deceived the plaintiff with reference to his appointment as manager, with the intent to induce him to alter his position to his injury seems clear. If so, they are liable for any damage which he thereby suffered. (Rev. Codes, secs. 5072, 5073; *Cockrill* v. *Hall,* 65 Cal. 326, 4 Pac. 33; *Hoffman* v. *Kirby,* 136 Cal. 26, 68 Pac. 321.) The principle underlying the case was announced by this court in *Sathre* v. *Rolf,* 31 Mont. 85, 77 Pac. 431. (See, also, Bishop on Contracts, secs. 667, 668.)

It is apparent from the allegations of the complaint that rescission by plaintiff is impossible, for the reason that the entire *status* of both parties has changed, much of the personal property of plaintiff has been sold and disposed of, and it is impossible to put both parties in *statu quo.* (*Clark* v. *American D. & M. Co.,* 28 Mont. 468, 72 Pac. 978; *Thomas* v. *McCue,* 19 Wash. 287, 53 Pac. 161.) Where the rights of others have intervened and the circumstances of the parties have so far changed that rescission may not be decreed without injury to those parties and their rights, rescission will be denied and the complaining party left to his action at law for damages for the fraud. (*Meyers* v. *Merillion,* 118 Cal. 352, 50 Pac. 662.)

If the action is properly based upon the principles of the sections of the Revised Codes, *supra,* then the statute of frauds cannot be appealed to, for the suit is not upon the contract but for damages for fraud. If it be held to be upon the oral contract executed and performed by plaintiff, then the statute of frauds furnishes no defense to an action upon the contract where the contract was executed by the plaintiff, and the defendant has received the conveyance of the land upon the faith of his

promise; for the statute will not avail him even if his promise had originally been within it. A party who receives a grant of land upon his promise to pay for it cannot avoid payment by showing that his promise was not in writing. (*Brackett* v. *Evans,* 1 Cush. 79, citing *Bowen* v. *Bell,* 20 Johns. 338, 11 Am. Dec. 286; *Baxter* v. *Gay,* 14 Conn. 119; *Gray* v. *Hill,* Ryan & M. 420; Addison on Contracts, 94.) When the title has passed the grantee must pay the price agreed upon, and the rule holds good when the consideration for the conveyance is not money but a promise of the grantee. An action will lie for the breach of such promise if it is not itself within the statute. (20 Cyc. 294, 295; *Chapman* v. *Allen,* 1 Kirby (Conn.), 399, 1 Am. Dec. 24; *Trayer* v. *Reeder,* 45 Iowa, 272; *Atchison etc. R. Co.* v. *English,* 38 Kan. 110, 16 Pac. 82; *Preble* v. *Baldwin,* 6 Cush. 549; *Brackett* v. *Evans,* 1 Cush. 79.) If an agreement which was unenforceable, because within the statute, has been performed, an action will ordinarily lie for the refusal to perform a promise given in consideration thereof or in connection therewith. (20 Cyc. 293; *Ives* v. *Gilbert,* 1 Root (Conn.), 89, 1 Am. Dec. 35; *Straughan* v. *Indianapolis etc. R. Co.,* 38 Ind. 185; *Aiken* v. *Nogle,* 47 Kan. 96, 27 Pac. 825; *Lamar* v. *McNamee,* 10 Gill & J. (Md.) 116, 32 Am. Dec. 152; *Hurley* v. *Donovan,* 182 Mass. 64, 64 N. E. 685; *Remington* v. *Palmer,* 62 N. Y. 31; *Bridge Co.* v. *Brewing Co.,* 90 Fed. 189.) The alleged contract to make Kelly manager for the remainder of his active business life is not an agreement to be performed within one year so as to be void under the statute of frauds; for an oral agreement to continue to do some particular act for an indefinite period of time is not within the statute, if by the fair import of its terms either party may terminate it any time whether after or before the expiration of the year. (20 Cyc. 203; *Atchison etc. R. Co.* v. *English, supra.*)

There was a brief on behalf of Respondents, by *Mr. John A. Luce,* and *Mr. John E. Barbour,* and oral argument by *Mr. Luce.*

The written contract superseded all oral negotiations. (Rev. Codes, sec. 5018; *Ming* v. *Pratt,* 22 Mont. 262, 56 Pac. 279;

*Armington* v. *Stelle,* 27 Mont. 13, 94 Am. St. Rep. 811, 69 Pac. 115; *Riddell* v. *Peck-Williamson Co.,* 27 Mont. 44, 69 Pac. 241; *Easterly* v. *Jackson,* 29 Mont. 496, 75 Pac. 357; *Union Mut. Life Ins. Co.* v. *Mowry,* 96 U. S. 544, 24 L. Ed. 674; *Bradford Investment Co.* v. *Joost,* 117 Cal. 211, 48 Pac. 1083.)   It will be seen from the complaint that the oral agreement which was part of the original contract, afterward reduced to writing, was not in any way upon a collateral matter, but related directly to the subject of the contract and, in fact, was the principal subject of the contract and falls squarely within the rule laid down by this court in the cases above cited.   (See, also, *Seitz* v. *Brewers Refrigerating Co.,* 141 U. S. 510, 12 Sup. Ct. 46, 35 L. Ed. 837; *Gillett* v. *Clark,* 6 Mont. 190, 9 Pac. 823; *Fisher* v. *Briscoe,* 10 Mont. 124, 25 Pac. 30;   *Nelson* v. *Spears,* 16 Mont. 351, 40 Pac. 786.)

Where the terms of an agreement have been reduced to writing, it is to be considered as containing all its terms.   (Rev. Codes, sec. 7873; *Gaffney Merc. Co.* v. *Hopkins,* 21 Mont. 13, 52 Pac. 561; *Guy* v. *Bibend,* 41 Cal. 322; *Harrison* v. *McCormick,* 89 Cal. 327, 23 Am. St. Rep. 469, 26 Pac. 830; *Cocke* v. *Blackbourn,* 58 Miss. 537; *Baum* v. *Lynn,* 72 Miss. 932, 18 South. 428, 30 L. R. A. 441; *Englehorn* v. *Reitlinger,* 12 N. Y. 76, 25 N. E. 297, 9 L. R. A. 548; *Vogt* v. *Schienebeck,* 122 Wis. 491, 106 Am. St. Rep. 989, 100 N. W. 820; *Jackowski* v. *Illinois Steel Co.,* 103 Wis. 448, 79 N. W. 757; *Caldwell* v. *Perkins,* 93 Wis. 89, 67 N. W. 29.)

A written contract cannot be reformed so as to insert in it a provision which was omitted with the consent of the party asking reformation, although the consent was given in reliance upon an oral promise of the other party that such omission should make no difference.   (*Sanford* v. *Gates,* 21 Mont. 277, 53 Pac. 749; *Eighmie* v. *Taylor,* 98 N. Y. 288, 294; *Irvin* v. *Irvin,* 142 Pa. 271, 21 Atl. 816; *Schroeder* v. *Schmidt,* 74 Cal. 459, 16 Pac. 243; *Braun* v. *Wisconsin Rendering Co.,* 92 Wis. 247, 66 N. W. 196.)

Even though a reformation of the contract were asked,—and it is only in this way that the plaintiff could recover, if at all,—a court of equity would not reform the contract because the plaintiff was not without fault. Where a party has the means of observation or knowledge, the doctrine of *caveat emptor* applies, and omitted stipulations will not be supplied in the contract by reformation. (*Manlove* v. *Fairbanks,* 45 Wis. 415; *Prince* v. *Overholser,* 75 Wis. 646, 44 N. W. 775; *Hunt* v. *Hardwick,* 68 Ga. 100; *Floars* v. *Aetna Life Ins. Co.,* 144 N. C. 232, 56 S. E. 915, 11 L. R. A., n. s., 357, 359; *Grieve* v. *Grieve,* 15 Wyo. 358, 89 Pac. 569, 9 L. R. A., n. s., 1211.)

Respondents contend that for the claimed fraud as alleged in the complaint, the only relief open to the appellant was rescission of the contract. No rescission has ever been attempted to be made by the plaintiff and the time for rescission has long since passed. The plaintiff's duty was clear. If the consent to the written contract was obtained by fraud, immediately upon his ascertaining that the defendants had no intention of complying with the contract to make him manager, he should have rescinded the whole contract. (See *Grymes* v. *Sanders,* 93 U. S. 55, 23 L. Ed. 798; *McLean* v. *Clapp,* 141 U. S. 429, 12 Sup. Ct. 29, 35 L. Ed. 804; *Thomas* v. *McCue,* 19 Wash. 289, 53 Pac. 161; *Richardson* v. *Lowe,* 149 Fed. 625; *McDonough* v. *Williams,* 77 Ark. 261, 92 S. W. 783, 8 L. R. A., n. s., 452; *Delano* v. *Jacoby,* 96 Cal. 275, 31 Am. St. Rep. 201, 31 Pac. 290; *Scott* v. *Walton,* 32 Or. 460, 52 Pac. 180.) Under the authorities above cited, the plaintiff has waived any rights which he had by his own neglect and misconduct. (*City of Memphis* v. *Brown,* 20 Wall. 289, 22 L. Ed. 264.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The complaint in this action is quite lengthy, and a sufficient summary of it may be made to fairly present the controversy without setting it forth in full. It appears from the complaint that the Briggs & Ellis Company is a New Jersey corporation

engaged in the sheep business in Montana, with its principal place of business in Sweet Grass county; that the defendant Ellis is president, general manager, and principal stockholder of the company, and had the authority to contract for and on behalf of the company; that a local manager was employed, who resided in Sweet Grass county; that in April, 1906, James Vestal, who owned 351 shares of the capital stock of the Briggs & Ellis Company, was such local manager, but was about to retire from that position; that at that time the plaintiff was receiver of the United States land office at Bozeman, having an income of $3,000 per year, with about one year of his term then to serve; that at that time the plaintiff was also engaged in the sheep business in Sweet Grass county; that he owned about 2,700 acres of land, which was almost surrounded by the lands of the Briggs & Ellis Company; that he ran about 2,500 head of sheep, and had all necessary personal property to successfully operate his plant, and was a man of wide experience in the sheep business—all of which facts were known to the defendants. It is then alleged that on or about April 10, 1906, the plaintiff and defendants entered into an oral agreement which provided, on the part of Kelly: (1) That he should sell his lands, sheep, and other personal property in Sweet Grass county to the Briggs & Ellis Company; (2) that he should take 100 shares of the Vestal stock, in lieu of $7,500, as a part payment; (3) that he should resign as receiver of the land office; and (4) that he should devote his time to the performance of the duties as local manager of the Briggs & Ellis Company in Sweet Grass county "for such time as his health, strength and age might permit him to be in active business." On the part of the defendants: (1) That they should pay Kelly for his lands $15,000, and for his personal property $12,994, as follows: $6,558.55 in cash, the 100 shares of Vestal stock, the note of the Briggs & Ellis Company for $4,553.39, and they should assume and pay certain indebtedness of Kelly; and (2) that Kelly should be local manager for the time mentioned above, and should be paid for

his services $2,000 per year, and should be allowed his expenses and the living expenses of himself and wife.

The complaint then sets forth that on April 17 a memorandum in writing was prepared by the defendants (presumably intended to embody all the terms of the oral agreement), and presented to plaintiff for his signature; that such memorandum did not contain any reference whatever to the employment of plaintiff as local manager, and, because of such omission, plaintiff at first refused to sign the same; "that on such refusal said defendant W. Dixon Ellis then and there agreed with plaintiff that such omission should make no difference in the real contract between the parties; that neither he nor said defendant company had ever had a written contract with their manager in Sweet Grass county, and that they would put such employment on record in the minutes of their directors' meeting, and that if plaintiff would sign said memorandum, and would transfer his personal property and with his wife deed his real property in accordance with the terms of their oral agreement theretofore made, he, the said defendant W. Dixon Ellis, and his said company would make plaintiff the manager of said company upon the salary as agreed upon during all of the remainder of his active business life"; that plaintiff, relying upon the promise of the defendant Ellis, and believing that he was acting in good faith and not otherwise, signed the memorandum, and on April 18 he and his wife executed and delivered to the Briggs & Ellis Company a deed conveying the real estate, and also transferred to said company the personal property, and received the consideration first above mentioned; that plaintiff at once resigned as receiver of the land office, and presented himself to perform the duties of local manager for defendants; that the defendants refused to employ him, and refused to pay him any salary, or allow him anything for expenses or for the living expenses of himself and wife; that defendants so negligently managed their business during 1906 that it resulted in a loss, whereas by proper management it should have shown a profit. It is also alleged that the oral agreement to employ plaintiff as local manager was fraudulently made,

without any intention on the part of either of the defendants to keep or perform the same, and for the sole purpose of procuring the plaintiff to part with his property and to drive him out of the sheep business. It is then alleged that because of the agreement to make him local manager, plaintiff sold his real estate to the defendants for $5,000 less than its real value, and his sheep for $1,200 less than their real value; that if plaintiff had been made local manager, he would have conducted the business at a profit, and that his profit as a stockholder thereof, and his salary and living expenses, would have amounted to $3,000 per annum. It is then charged that by reason of the fraudulent acts of the defendants, the plaintiff sold his property at much less than its real value; that he has been deprived of his sheep business, which theretofore had returned him a profit of $2,500 per year; that he has lost his position as receiver of the land office and his prospects of reappointment to that office. It is also alleged that defendants went into possession of the property sold to them by the plaintiff, and have sold and otherwise disposed of a large amount of the personal property. The complaint concludes: "And plaintiff says that the said false and fraudulent conduct and promises of defendants, and particularly defendant W. Dixon Ellis, were calculated to and did deceive the plaintiff, and that by reason thereof plaintiff was and is damaged in the sum of $25,000, no part of which has been paid. Wherefore, plaintiff demands judgment," etc.

The defendants interposed a demurrer, which was sustained, and plaintiff, electing to stand upon his complaint, suffered judgment to be rendered and entered against him and appealed to this court.

This is an action for damages for deceit, predicated upon section 5072, Revised Codes, which provides that "one who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers," and upon subdivision 4, section 5073, which reads as follows: "A deceit, within the meaning of the last section, is: * * * (4) A promise made without any intention of per-

forming it." These Code provisions are merely declaratory of rules which were generally in force long before they were reduced to the form of statutes. The controversy precipitated by this appeal is whether these rules can be applied to the facts of this case. If the complaint had charged that the defendants entered into the written contract of April 17 without any intention of performing their part of it, or without any intention on their part of performing any one or more of the provisions therein made by them relating to a material matter, then, in either of those events, the plaintiff would show himself entitled to damages for the deceit. Upon this proposition the authorities are quite uniformly agreed. But there is not any complaint made here that defendants have not fully kept and performed all the terms of the written agreement by them to be kept and performed. The gist of the complaint is that they have not kept or performed the oral agreement to employ plaintiff as local manager, and that they never intended to keep that agreement when they made it. However, for the violation of that promise the statute stands as an insuperable barrier between plaintiff and any recovery, unless the promise to employ him was a matter collateral to the principal agreement.

Section 7873, Revised Codes, provides: "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases: (1) Where a mistake or imperfection of the writing is put in issue by the pleadings. (2) Where the validity of the agreement is the fact in dispute. * * * " There is not any attack made upon the validity of the written agreement; and, since it appears from the complaint that at the time the plaintiff signed the written contract upon April 17 he fully understood and appreciated that it did not contain any provision for his employment as local manager, but nevertheless voluntarily signed it, he will not be heard to say now that such writing does not

contain all the terms of the agreement for the sale of his real and personal property in Sweet Grass county, and he cannot bring himself within either of the exceptions noted in the statute above. However, the writing of April 17 only superseded all the oral negotiations and stipulations between the parties so far as such negotiations and stipulations related *to the matter of their agreement.* The Code so provides in unmistakable terms: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." (Revised Codes, sec. 5018.) It did not necessarily supersede all their prior or contemporaneous negotiations; and, if the defendants by fraud or deceit, with respect to some collateral matter, induced the plaintiff to sign the writing, then he might be heard to complain.

In *Seitz* v. *Brewer's Refrigerating M. Co.,* 141 U. S. 510, 12 Sup. Ct. 46, 35 L. Ed. 837, the court said: "Undoubtedly the existence of a separate oral agreement as to any matter on which a written contract is silent, and which is not inconsistent with its terms, may be proven by parol, if under the circumstances of the particular case it may properly be inferred that the parties did not intend the written paper to be a complete and final statement of the whole of the transaction between them. But such an agreement must not only be collateral, but must relate to a subject distinct from that to which the written contract applies; that is, it must not be so closely connected with the principal transaction as to form part and parcel of it. And when the writing itself upon its face is couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing." That case is cited by this court in *Armington* v. *Stelle,* 27 Mont. 13, 94 Am. St. Rep. 811, 69 Pac. 115, where, after reciting the sections of the Code above, it is said: "The statutory provisions cited are but declaratory of the common-law rule (1 Greenleaf on Evi-

dence, sec. 275), and recognize all the exceptions for which it provides. Among these is the case in which evidence may be received of the existence of an independent oral agreement not inconsistent with the stipulations of the written contract, and in respect of which the writing does not speak, but not to contradict, vary, add to, or qualify the absolute terms of the written contract. In such a case the independent oral agreement must have been upon some collateral matter, and must have operated as an inducement to the complaining party to enter into the agreement, whereas in the absence of it he would not have done so. To deny the admission of evidence in such a case, if relevant to the issues made by the pleadings, would be to allow one of the parties to induce another to enter into the engagement under false representations, and to aid him to enforce it against his adversary notwithstanding the fraud practiced upon him, by holding out to him the fraudulent inducement. We recognize this principle, and believe it to be in full accord, not only with the spirit of the statute, but also with adjudged cases (citing authorities). This principle, however, does not apply to a case in which the oral promise relates directly to the subject of the contract, even though the claim be that the complaining party signed the instrument upon such promise.''

The only remaining inquiry, then, is: Was the promise to employ plaintiff as local manager one of the essential terms of the oral contract itself, or was it only a collateral agreement made by the defendants as an inducement to the plaintiff to dispose of his property? This inquiry is fully answered by the complaint, which alleges that: ''It was distinctly understood between this plaintiff and said defendant D. Dixon Ellis that the employment and appointment of plaintiff as manager of the business and properties of said defendant Briggs & Ellis Company, with headquarters in Sweet Grass county, for such time as his health, strength, and age might permit him to be in active business, at a salary of $2,000 a year and expenses, and the living expenses of himself and wife, was the most important condition of said agreement, and the inducement, and only in-

ducement, to plaintiff's entering into such agreement, and, without such agreement for the employment of plaintiff as manager as aforesaid, that he would not enter into any agreement for the sale of his said properties, nor would he sell the same to said defendants, or either of them.'' While it is here said that such promise of employment was an inducement to plaintiff to sell his property, it is likewise said that such promise was ''the most important condition of the agreement,'' and that but for that promise the plaintiff would not have sold his properties to the defendants. From these allegations, and others in the complaint, we are led to agree with the plaintiff that he considered the oral promise which provided for his employment as local manager as the most important portion of the agreement; or, as was said in *Armington* v. *Stelle,* above, it was of the very essence of their contract. This being so, to permit the plaintiff to assert any right under that promise would nullify the statute quoted above.

Unfortunately for plaintiff, he consented to the writing of April 17, which completely superseded the prior oral negotiations, including the promise to employ him, and the statutes of this state now forbid him to say that there ever was any oral promise for his employment. In frankly stating all the facts out of which this controversy arose, the plaintiff has successfully pleaded himself out of court. His complaint does not state any cause of action.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

Rehearing denied, December 17, 1909.