ARNOLD ET AL., RESPONDENTS, *v.* FRASER, APPELLANT.

(No. 2,989.)

(Submitted September 20, 1911.   Decided October 9, 1911.)

[117 Pac. 1064.]

*Real Property—Contracts of Sale—Default by Vendee—Complaint—Tender — Sufficiency — Mortgagor and Mortgagee — Tenancy—Improper Counterclaims—Oral Agreements Merged in Written Contract.*

Real Property—Contracts—Cancellation—Complaint — Promissory Notes —Tender—Sufficiency.

1.  In a suit to cancel a contract of sale of real property because of breaches thereof by the vendee, the complaint which alleged that the notes evidencing deferred payments were brought into court for cancellation and return to defendant, was sufficient as against the objection that tender thereof had not been made before commencement of suit.

Same—Encumbrances—Complaint—Sufficiency.

2.  An allegation that the land mentioned in a contract of sale was free from encumbrances and that plaintiffs were able to convey title was unnecessary in a suit by the vendor seeking cancellation because of breaches of its provisions by the vendee.

Same—Tender—Complaint—Sufficiency.

3.  Assuming (but not deciding) that it was necessary for plaintiffs to allege that they had tendered to defendant all moneys paid by him under the contract of sale, the requirement of the law that defendant shall first be placed *in statu quo,* was met by an allegation that he had the use of the premises from the date of the contract to the commencement of suit, and that the rental value of the property exceeded the amounts paid by defendant to or for the use of plaintiffs.

Same—Default of Vendee—Mortgages.

4.  *Held,* that a contract of sale which, among other things, provided that time should be of the essence of it, that the vendors could at their option terminate it for failure on the part of the vendee to comply strictly with its terms, and that upon such termination the property involved and all payments made by the

vendee should be the property of the vendors, and the vendee should not have any action to recover, was not a mortgage.

Same—Default by Vendee—Tenancy.

5. In the absence of a provision in a contract of sale of real property, for the creation of a tenancy in case of default by the vendee, further occupancy of the premises by him will not be deemed to have been under an implied agreement permitting him to hold as tenant.

Same—Improper Counterclaims.

6. Allegations that plaintiffs orally represented to defendant that the land sold to him comprised a larger acreage than he actually received, and that having executed the contract of sale in reliance on such false representations, he was entitled to be given credit for a certain amount because of such deficiency in the quantity of land, *held,* not to have constituted counterclaims in a suit to cancel the contract because of defendant's failure to carry out its provisions.

Same—Oral Agreements Merged in Written Contract.

7. A written contract supersedes any oral negotiations theretofore had relative to the subject matter of it, and must be considered as containing all of its terms agreed upon at the time it was executed.

Same—Evidence—Inadmissibility.

8. Evidence to prove an alleged oral agreement subsequently superseded by a written contract is inadmissible.

Same—Improper Counterclaims.

9. That defendant, relying upon plaintiffs' false statements that the ditches upon the lands purchased by him from them were in proper condition to carry and distribute water, suffered loss by damage to his crops, and was put to expense for repairs, did not constitute counterclaims in a suit to cancel the contract of sale.

*Appeal from District Court, Yellowstone County; Sydney Sanner, Judge of the Seventh Judicial District, presiding.*

*Messrs. Hathhorn & Brown* submitted a brief in behalf of Appellant. *Mr. Brown* argued the cause orally.

We submit that the counterclaims set forth in the answer do arise out of the transaction set forth in plaintiff's complaint as the foundation of the plaintiff's claims, and also that they are directly connected with the subject of the action. If these counterclaims had not been stricken out and had been proven and allowed to the defendant by the jury or by the court, the defendant would not have been in default upon his contract, because enough money would have been realized by him to have made all the payments and more than the payments. That the matters alleged in the counterclaims are such as could be counterclaimed in this action, we submit this court has already decided. (*Kaufman* v. *Cooper,* 39 Mont. 146, 101 Pac. 969; *Erbs* v. *Smith,*

35 Mont. 47, 88 Pac. 568; see, also, Pomeroy's Code Remedies, 4th ed., par. 670, p. 927, and notes 1 and 2.)

There is no allegation that the notes mentioned in the contract were tendered to the defendant before this action was commenced and no demand made by the plaintiffs for the possession of the premises involved. We submit, further, that there is no allegation in the complaint that at the time the plaintiffs attempted to declare the contract, which constitutes the basis of their action, null and void, the premises mentioned in the contract were free from encumbrances, and that they were able to convey a good and sufficient title free from all encumbrances, which they were ready and willing to do. This is a necessary allegation. (*Washington & Turner* v. *Ogden,* 2 Black (U. S.), 456, 17 L. Ed. 203; *Tharp* v. *Lee,* 25 Tex. Civ. App. 439, 62 S. W. 93.) There is no offer to restore to the appellant any of the purchase money paid by him, or to place him in the same condition he was before the contract was made. In view of the fact that this is an action practically to rescind the contract, we submit that it comes within subdivision 2 of section 5065, Revised Codes. (*Cotter* v. *Butte etc. Smelting Co.,* 31 Mont. 129, 77 Pac. 509.)

Furthermore, we contend that the contract in question here is simply a mortgage upon the premises to secure the unpaid purchase money represented by the notes which accompanied the contract between the parties. If the contract before the court is not a security for the payment of the notes, it is difficult to state what it was given for. If the notes had been sold to anybody by the payees, they certainly would have had rights under the agreement in evidence, or if one of the notes had been sold by the vendors named in the agreement, the purchaser of that one would have had security for the payment of the note, and the contract in question would have been his security. (*Nightingale* v. *Barens,* 47 Wis. 389, 2 N. W. 767; *Conner* v. *Banks,* 18 Ala. 42, 52 Am. Dec. 209; *Keller* v. *Lewis,* 53 Cal. 113; *McCrillis* v. *Cole,* 25 R. I. 156, 105 Am. St. Rep. 875, 55 Atl. 196.)

The complaint in this action seeks to enforce a forfeiture which can never be done in equity. (*Keller* v. *Lewis,* 53 Cal. 113.) On

the contrary, equity frequently interposes to prevent the enforcement of a forfeiture at law.    (16 Cyc. 80.)

The notice to quit was not such a notice as was required in this class of cases.    The appellant was a tenant at will of the appellees.    (*Raynor* v. *Haggard,* 18 Mich. 72; *Rawson* v. *Babcock,* 40 Mich. 330; *Knight* v. *Hartman,* 81 Mich. 462, 45 N. W. 1008.) Tenancy at will is one that may be terminated at the will of either party.    (*Davis* v. *Murphy,* 126 Mass. 143; *Hilsendegen* v. *Scheich,* 55 Mich. 468, 21 N. W. 894.)    A person who enters and holds land under a contract to buy it is to be regarded at law as at least a tenant at will.    (*Jones* v. *Jones,* 2 Rich. (S. C.)    542.) The notice to quit in this case was served on the sixteenth day of November, 1908; this case was commenced by filing a complaint on the twenty-fifth day of November, 1908.    If the appellant was a tenant at will, as the authorities hold him to be, upon which there is no conflict, then this notice is not sufficient, and this action is brought prematurely.    A tenancy at will in this state can only be terminated by a notice in writing given in the manner prescribed by the Code of Civil Procedure, requiring the tenant to remove from the premises within a period of not less than one month, to be specified in the notice.    No such notice appears in the record, and is not alluded to in the complaint.

*Mr. O. F. Goddard,* for Respondents, submitted a brief and argued the cause orally.

The counterclaims set up in the answer are not such as are contemplated by section 6541, Revised Codes.    (See *Usmers* v. *Furey,* 32 Mont. 593, 81 Pac. 345; *Babcock* v. *Maxwell,* 21 Mont. 507, 54 Pac. 943; 34 Cyc. 756; *Yorba* v. *Ward,* 109 Cal. 107, 38 Pac. 48, 41 Pac. 793; *Bannerot* v. *McClure,* 39 Colo. 472, 90 Pac. 70, 12 L. R. A., n. s., 126; *Bank* v. *Kidd,* 20 Minn. 234; *Lipman* v. *Iron Works,* 128 N. Y. 58, 27 N. E. 975; *Mattoon* v. *Baker,* 24 How. Pr. 329; *Dietrich* v. *Koch,* 35 Wis. 618.)

This is an executory contract, and may be rescinded.    Courts have uniformly held that the rescission of an executory contract of sale of real estate, upon the failure of the vendee to pay the purchase price, may be made when provision for a forfeiture is

made in the contract, provided the vendor places the vendee *in statu quo,* when he elects to rescind. (*Dana* v. *St. Paul Investment Co.,* 42 Minn. 194, 44 N. W. 55; *Frink* v. *Thomas,* 20 Or. 265, 25 Pac. 717, 12 L. R. A. 239; *Graham* v. *Merchant,* 43 Or. 294, 72 Pac. 1088; *Maffet* v. *Oregon & C. R. Co.,* 46 Or. 443, 80 Pac. 489; *Richardson* v. *Woodlawn Town Co.,* 5 Kan. App. 626, 47 Pac. 556; *Chambers* v. *Anderson,* 51 Kan. 385, 32 Pac. 1098; *Smith* v. *Mohn,* 87 Cal. 489, 25 Pac. 696; *Raymond* v. *San Gabriel Val. Land & Water Co.,* 53 Fed. 883, 4 C. C. A. 89; *Wilcoxson* v. *Stitt,* 65 Cal. 596, 52 Am. Rep. 310, 4 Pac. 629; *Jones* v. *Bowling,* 117 Mich. 288, 75 N. W. 611; *Keefe* v. *Fairfield,* 184 Mass. 334, 68 N. E. 342; *Boulder & B. Placer Co.* v. *Maxwell,* 24 Colo. 87, 48 Pac. 815; *McAdams* v. *Felkner,* 140 Cal. 354, 73 Pac. 1064; *Haile* v. *Smith,* 113 Cal. 656, 45 Pac. 872.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This is a suit in equity, brought to secure a decree canceling a certain contract. Issues were joined upon the original pleadings and the cause brought to trial before the court sitting with a jury. By agreement of counsel and the approval of the court, after a portion of the evidence had been taken the jury were discharged, the parties permitted to reform their pleadings, and the cause was thereupon tried and submitted to the court. The plaintiffs filed an amended and supplemental complaint—referred to in the brief as the substituted complaint—and the defendant filed an answer thereto which contains certain admissions, certain denials and four affirmative pleas denominated "counterclaims." From the record it appears that on May 1, 1907, the plaintiffs and the defendant entered into a contract in writing, by the terms of which the plaintiffs agreed to sell to the defendant, and the defendant agreed to purchase from the plaintiffs, certain real estate and personal property situated near Billings, Montana. The purchase price agreed upon was $37,000, payable in six installments: $2,000 upon the execution of the contract, and the balance, with interest, payable in five annual installments, the last payment to be made May 1, 1912, each of the

deferred payments being represented by a promissory note. In the contract the land is described by legal sectional subdivisions and by government lots. As ground for a cancellation of the contract the plaintiffs allege breaches by defendant in the following particulars: (1) The failure and refusal of defendant to pay the installment and interest due May 1, 1908; (2) failure to pay the installment and interest due May 1, 1909; (3) failure to keep the buildings insured; and (4) the failure to pay certain assessments on stock in irrigation companies. Plaintiffs allege that after breach by the defendant they gave notice of their intention to terminate the contract as required by it, and they brought into court the promissory notes for cancellation and redelivery to defendant. They allege that the defendant has had free use and enjoyment of the property during the seasons of 1907 and 1908 and received a part of the crop for the year 1909. They allege that the fair rental value of the land was $1,500 per year, and that the defendant has had the use of the personal property, and has received in benefits from the use and occupation of the property more than he has paid to, or for the use of, plaintiffs. The answer admits that an installment of the principal and the interest were due on May 1, 1908, but there is apparently a denial that these amounts have not been paid. There is an admission that the installment and the interest due May 1, 1909, have not been paid. Upon motion of plaintiffs the court struck out the first three of the so-called counterclaims, and upon the issues joined found for the plaintiffs and entered a decree, from which decree and an order denying his motion for a new trial the defendant has appealed.

1. The first contention made is, that the complaint does not state a cause of action; that it is deficient in the following particulars: (a) It does not appear therefrom that the notes representing the deferred payments were tendered to the defendant [1] before this suit was instituted. The complaint does allege that the notes were brought into court for cancellation and return to defendant, and we think this is sufficient. (*Maloy v. Berkin*, 11 Mont. 138, 27 Pac. 442; 6 Cyc. 313.)

(b) It is said that the complaint is open to attack because it fails to allege that the land mentioned in the contract was free from encumbrances and that plaintiffs were able to convey title. [2] If this was an action to recover the purchase price or damages for a breach, such an allegation might be necessary; but in a suit to cancel the contract we are unable to understand what office such an allegation would perform. However, in paragraph 9 of the complaint, the plaintiffs allege facts sufficient to meet the rule for which appellant contends.

(c) It is further urged that the complaint is defective in failing to allege that plaintiffs have tendered to defendant the money paid by him under the contract. Upon the trial of this cause in the district court, and upon this appeal, both parties have proceeded upon the assumption that it is necessary for the complaint to contain an allegation that the plaintiffs have returned, or offered to return, to the defendant the moneys paid by him to or for plaintiffs' use, or an equivalent allegation, and we shall determine this appeal upon the theory of the parties as thus presented, reserving the question whether in a suit to cancel a contract of this character it is necessary for the plaintiff to place the defendant *in statu quo,* or to allege in his complaint that he has done so or made tender. Assuming for the purposes of this [3] appeal that such an allegation is required, we think the complaint sufficient; for it alleges that the defendant has had the use of the premises from the date of the contract to the commencement of the action; that the rental value of the property exceeds the amounts paid by defendant to, and for the use of, plaintiffs. All that the law requires under the rule recognized by the parties hereto is that the defendant shall be placed in as favorable a position as he was at the date of the contract, and plaintiffs' allegations in that respect are sufficient. It would be idle to require the plaintiffs to return to defendant the amount of payments made, if a decree in plaintiffs' favor would require defendant to account for an equal or greater amount. In *Lytle* v. *Scottish Am. Mort. Co.,* 122 Ga. 458, 50 S. E. 402, it is well said: "He [the vendee] is not entitled to a return of his purchase money until he has allowed, as a deduction therefrom,

all damages caused by his breach, one element of which will be the
fair rental value of the property during the time he occupied it,
even up to verdict.'' (29 Am. & Eng. Ency. of Law, 2d ed., 649,
652; *Wilson* v. *Moriarty*, 77 Cal. 596, 20 Pac. 134.)

2. It is insisted by appellant that at the time this action was
commenced he sustained toward respondents the relationship of
mortgagor to mortgagees, and that plaintiffs' only remedy was
by foreclosure, under section 6861, Revised Codes. This con-
tract is not in form a mortgage but an agreement to sell; however,
it is insisted that since notes were given for the deferred pay-
ments, the vendee let into possession and the legal title retained
by the vendors, equity will treat the transaction as a mortgage,
and cases are cited which appear to lend support to this view.
An examination of the authorities, however, will disclose the
distinguishing characteristic in every instance. Every such case
must be determined on its own facts and circumstances; for it
is a cardinal rule in equity that the intention of the parties must
give character to their transactions. In *Western Nat. Bank* v.
*National Union Bank*, 91 Md. 613, 46 Atl. 960, the court said:
''An equitable mortgage results from different forms of trans-
actions in which there is present an intent of the parties to make
a mortgage, to which intent, for some reason, legal expression is
not given in the form of an effective mortgage; but in all such
cases the intent to create a mortgage is the essential feature of
[4] the transaction.'' This contract purports to be an agree-
ment by the plaintiffs to sell, and by the defendant to purchase,
certain real and personal property upon the terms and conditions
specified. It provides that time shall be of the essence of it; that
the vendors may at their option terminate it for failure on the
part of the vendee to comply strictly with its terms, and that
upon such termination, the property involved and all payments
made by the vendee shall be the property of the vendors, and the
vendee shall not have any action to recover. In view of these
provisions, for us to hold that the transaction evidenced by the
contract amounted to a mortgage would be to make a new con-
tract for the parties, and one widely at variance with their mani-

fest intention—something a court of equity will not undertake to do.

3. It is next insisted that the relationship existing between the parties was that of landlord and tenant at will, and the notice to quit, given but eleven days before suit, was insufficient under section 4502 of the Revised Codes, and that this suit was brought prematurely. In speaking of the relationship existing between the parties to a contract to purchase real estate prior to default, the author of the article on Landlord and Tenant, in 24 Cyc. 884, says: "While in many cases a person in possession of premises under an executory contract of purchase has been said to be a tenant at will of the vendor, the rule supported by apparently the better authority is that, in a strict sense, the relation of landlord and tenant does not arise under such circumstances, it being said that there can be no implied contract from which the relation of landlord and tenant may arise in opposition to the express contract of sale." And, speaking of the same subject after default, the author says: "After default in, or abandonment of, the contract of sale, further occupancy by the vendee may raise an implied tenancy at will, or, according to some cases, at sufferance. But in the absence of a provision in the contract of sale for the creation of a tenancy, such as an express agreement to pay rent upon default, the failure of the purchaser to comply with his contract, or of the vendor to fulfill upon his part, will not cause the occupancy under the contract to be regarded as having been as tenant." It is elementary that the relationship of landlord and tenant arises out of contract, express or implied. (24 Cyc. 876.)

There is not any contention made—and there could not be—that this contract in terms creates the relationship of landlord and tenant; but apparently the theory is that after default the vendee holds possession at the pleasure of himself or of the vendor, and by some process is converted into a tenant at will. There are authorities which uphold this view, but with them we [5] do not agree. The decided weight of authority and the better reasoning support the view that there cannot be an implied agreement for the occupancy of the land, in the face of the

express contract that the vendee holds possession under his right to purchase. (*Carpenter* v. *United States,* 17 Wall. (U. S.) 489, 21 L. Ed. 680; *Griffith* v. *Collins,* 116 Ga. 420, 42 S. E. 743; *Quertermous* v. *Hatfield,* 54 Ark. 16, 14 S. W. 1096; *Brown* v. *Randolph,* 26 Tex. Civ. App. 66, 62 S. W. 981.) The right of the vendee to purchase continued after breach by him and until such time as the vendors saw fit to exercise the option given them by the contract to terminate it; so that it cannot be said that the contract to purchase was in full force and effect, and at the same time there was in effect, also, an implied agreement that the vendee should hold as tenant. The action of the parties under this contract completely negatives the idea that either ever intended that their relationship should be that of landlord and tenant.

4. Complaint is made of the ruling of the trial court in striking out the so-called counterclaims. In the first of these it is alleged that the plaintiffs orally represented to the defendant that the land—the subject of the agreement—comprised 365 acres, whereas in truth and in fact there were but 340 acres; that plaintiffs knew the representations to be false but defendant believed them to be true, relied upon them and in consequence thereof executed the contract. It is alleged that the land was valued at $100 per acre, and defendant insists that, whether the contract be canceled or not, he should be given credit for $2,500 because of this deficiency in the quantity of land. Assuming **[6]** these allegations to be true for the purposes of this appeal, they do not constitute a counterclaim. If false representations were made by the plaintiffs as alleged, the vendee, upon discovering the fraud, might have had just cause for rescinding the contract, or might have had a cause of action for damages for the breach; but he cannot set them up as a defense to plaintiffs' cause of action for a cancellation of the contract. If plaintiffs were seeking to recover the purchase price, and defendant could prove these allegations, he would be entitled to be relieved from the payments *pro tanto,* but the allegations, if true, do not tend to diminish or defeat the plaintiffs' recovery in this action and were properly stricken out. (*Osmers* v. *Furey,* 32 Mont. 581,

81 Pac. 345.)    The defendant does not allege that he was damaged by reason of the deficiency in the quantity of land, and it is difficult to determine upon what theory he asserts this claim.

5. The second so-called counterclaim is predicated upon the refusal of plaintiffs to permit the defendant to sell forty acres of the land for $6,000 and to approve the sale and credit defendant with the amount of this purchase price.    It is alleged that prior to the execution of the written contract of May 1, 1907, plaintiffs and defendant had negotiated for the sale and had reached an oral agreement.    It is then alleged that at the time this oral agreement was made, the plaintiffs contracted orally to permit the defendant to sell quantities of the land in question for not less than $100 per acre, and to approve such sales and credit defendant with the amounts of such sale prices upon his contract price for the entire property.    A breach of this oral agreement is then alleged, and defendant claims that he is entitled to be credited with $6,000.    But this contract, if made, was superseded [7] by the written contract of May 1, 1907, and since the written contract does not contain any provision for such transactions, defendant cannot be heard to assert any right under such oral agreement.    It is not claimed that there is any mistake or imperfection in the written contract with respect to such transactions, and the written agreement must be considered, therefore, as containing all the terms of their contract which had been agreed upon at the time the written contract was executed. (Rev. Codes, secs. 5018, 7873; *Kelly* v. *Ellis,* 39 Mont. 597, 104 Pac. 873.)    Since evidence to prove this alleged oral agreement [8] would not have been admissible (*Riddell* v. *Peck-Williamson Co.,* 27 Mont. 44, 69 Pac. 241; *Armington* v. *Stelle,* 27 Mont. 13, 94 Am. St. Rep. 811, 69 Pac. 115), the court properly refused to consider defendant's claim arising from such agreement.

6. In the third so-called counterclaim stricken out by the court, it is alleged that at the time the contract was made the plaintiffs represented to defendant that the ditches for the irrigation [9] of the land were in proper condition to carry and distribute the water over the land; that the defendant believed these representations and relied upon them, and planted crops of grain and

hay which required irrigation; that when the irrigation season of 1907 arrived, defendant discovered that the ditches were wholly unfit for the purposes intended, and to repair them he was put to an expense of $403, and by reason of the delay incident to such repairing, his crops suffered from want of water and he was thereby damaged to the extent of $1,150. These facts, if true, do not tend to diminish or defeat the plaintiffs' cause of action, and, therefore, do not constitute a counterclaim. Evidence of these facts, if admissible at all, was admissible under the general denial, as reflecting upon the question of the rental value of the land, for the purpose of enabling the court to determine whether the value of the use and occupation of the property by defendant equaled the amounts paid by him to, and for the use and benefit of, plaintiffs, and, as a consequence, to determine whether the parties were in the same relative positions as they were at the time the contract was executed. It appears from the record that the defendant introduced evidence, without objection, as to the condition of the ditches and the expense he was obliged to incur to repair them. He did not offer any evidence as to the damage to his crops, and since he did not do so, we are not called upon to determine whether, if offered, such evidence would have been admissible.

The trial court disregarded the questions arising upon the alleged failure of defendant to keep the buildings insured or to pay the assessments upon the ditch stock; but found that the defendant had breached the agreement by his failure to make the payments due on May 1, 1908, and the payments due on May 1, 1909. The court also found that the value of the use and occupation of the premises by the defendant was $5,000, while the total amount paid by defendant to and for the use and benefit of plaintiffs was approximately $3,000. These findings are not attacked at all; and assuming that they are fully supported by the evidence, the defendant is not in a position to complain; for had the item of expense for repairing the ditches and the full amount of damages claimed by him as the result of injury to his crops been credited to him, it would still be found that he had received, in the use and occupation of the premises, an

amount far exceeding the payments made by him, including the damages which he had suffered.

7. Our conclusions upon these specifications render it unnecessary to consider the remaining assignments, further than to say that we do not find any reversible error.                    *

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

(Submitted September 20, 1911.   Decided October 21, 1911.)