LEE, APPELLANT, *v.* LEE GOLD MINING CO. ET AL., RESPONDENTS.

(No. 5,531.)

(Submitted November 15, 1924. Decided December 1, 1924.)

[230 Pac. 1091.]

*Contracts—Mines and Mining—Cancellation of Instruments— Indefiniteness—Want of Mutuality—Time of Performance— Appeal and Error—Briefs—Waiver.*

Appeal and Error—Briefs—Matters not Argued Deemed Waived.
   1. Matters not argued in appellant's brief will not be considered on appeal.

Contracts—Intention of Parties—How Arrived at.
   2. In the interpretation of a contract the intention of the parties must be pursued, if possible, the intention to be gathered from the entire agreement, not from particular words or phrases or disjointed or particular parts of it, the subject matter and the purposes of its execution being material to the ascertainment of their intention and the meaning of the terms used.

Same—Cancellation—Indefiniteness—Want of Mutuality.
   3. In an action by the owner of mining claims to cancel a contract under which defendants agreed to develop the claims, on the ground that the provision therein that its covenants and agreements "depend entirely upon the development of the property" and that "if the development proves satisfactory the contract shall be binding" were so vague and indefinite as to render the instrument void for indefiniteness, as well as for want of mutuality, contract construed and *held* not open to the objections made.

Same—Performance—Time not Stipulated—Reasonable Time Allowed.
   4. Failure of a contract for the development of mining claims to

[71 Mont. 592.]

provide a specified time within which defendants should begin operations and prosecute the work of development to completion is alone insufficient to void the contract, since under section 7548, Revised Codes of 1921, they were allowed a reasonable time within which to do the acts required.

Same—Cancellation—When Indefiniteness of Time of Performance not Important.

5. Where purchasers of an interest in mining property agreed to develop the property and proceeded to do so at once and continued doing so until an action was commenced by the owner to cancel the contract upon the ground, among others, that it did not provide a specified time within which operations should be begun and prosecuted to completion, plaintiff was not in a position to complain on the latter ground.

*Appeal from District Court, Fergus County, in the Tenth Judicial District; W. L. Ford, Judge for the Fourteenth District, presiding.*

ACTION by John Lee against the Lee Gold Mining Company and others. From a judgment for defendants, plaintiff appeals. Affirmed.

*Mr. P. F. Leonard,* for Appellant, submitted a brief; *Mr. James W. Freeman, of Freeman & Thelen,* of Counsel, argued the cause orally.

Contracts which are vague and lacking in mutuality have met the condemnation of our court in the following cases: *Ryan* v. *Dunphy,* 4 Mont. 342, 1 Pac. 710; *Ahlstrom* v. *Fitzpatrick,* 17 Mont. 295, 42 Pac. 757; *Price* v. *Stipek,* 39 Mont. 426, 104 Pac. 195; *Schwab* v. *McVey,* 54 Mont. 422, 171 Pac. 277; *Donovan* v. *Bull Mountain Trading Co.,* 60 Mont. 87, 198 Pac. 436; *Kofoed* v. *Bray* (Mont.), 220 Pac. 532; see, also, *Killebrew* v. *Murray,* 151 Ky. 345, 151 S. W. 662; *Willard, Sutherland & Co.* v. *United States,* 262 U. S. 489, 67 L. Ed. 1086, 43 Sup. Ct. Rep. 592; *Schimmel* v. *Martin,* 190 Cal. 429, 213 Pac. 33; *Zaring* v. *Lavatta,* 36 Idaho, 459, 211 Pac. 557.

Part performance does not in itself furnish a contractual basis or in all cases make that definite what is vague and uncertain. The following cases involved contracts partly performed: *Schwab* v. *McVey,* 54 Mont. 422, 171 Pac. 277;

*Donovan* v. *Bull Mountain etc. Co.,* 60 Mont. 87, 198 Pac. 436; *Pasco Reclamation Co.* v. *Cox,* 70 Wash. 549, 127 Pac. 107; *Willard etc. Co.* v. *United States, supra; Brewster District Unit* v. *Monroe,* 117 Wash. 21, 200 Pac. 841; *Zaring* v. *Lavatta,* 36 Idaho, 459, 211 Pac. 557; *Fitzstephens* v. *Whan,* 113 Kan. 650, 216 Pac. 269.

*Mr. E. F. Bunker* and *Mr. George Y. Patten,* for Respondents, submitted a brief; *Mr. Patten* argued the cause orally.

The contract in question *inter alia* provides that the defendants shall raise all the money necessary for the development of the mines, and the construction of a concentrator within one year after the date when it is proven that the development of the ore veins are sufficient to justify the expenditure. It is insisted by counsel for plaintiff that this part of the contract is indefinite and lacking in mutuality in the general provision that defendants shall raise the money necessary for the development of the claims, and in failing to specify with precision the method of determining when the development should be deemed to have reached a point to justify the necessary expenditure for a concentrator. Counsel urges that no time is specified within which performance shall be made, and no binding obligation is imposed upon the defendants to do anything, but that, on the contrary, they are left free to cease supplying money and quit development operations at any time.

In the nature of things it would have been difficult to specify more explicitly than the contract does how far developments should ultimately go if ore bodies were not found which would lead to profitable production, or just what development there should be before the concentrating plant was erected, and the necessary machinery installed. But even if there can be said to be a vagueness and indefiniteness in this respect, there was not such a defect as would invalidate the contract, but merely an ambiguity, which would be open to explanatory

proof at any time the question should arise. (*Helena Light & Ry. Co.* v. *Northern Pac. Ry. Co.,* 57 Mont. 93, 186 Pac. 702; *Wisconsin Farm Co.* v. *Watson,* 160 Wis. 638, 152 N. W. 449.)

Indefiniteness does not always invalidate a contract if there is enough for the court to ascertain the intention of the parties and carry it into effect; and the following are examples of cases in which contracts no more definite than the one under consideration have been sustained: *Henderson* v. *Spratlen,* 44 Colo. 278, 19 L. R. A. (n. s.) 655, 98 Pac. 14; *Iowa-Minnesota Land Co.* v. *Conner,* 136 Iowa, 674, 112 N. W. 820; *Pugh* v. *Jackson,* 154 Ky. 649, 157 S. W. 1082; *Id.,* 154 Ky. 772, 159 S. W. 600; *Morgan* v. *Child, Cole & Co.,* 41 Utah, 562, 128 Pac. 521. A contract is to be construed in favor of mutuality and certainty, and upheld, if possible. (13 C. J. 539; *Finley* v. *Missoula County School Dist. No. 1,* 51 Mont. 411, 153 Pac. 1010; *Haley* v. *Hollenback,* 53 Mont. 494, 501, 165 Pac. 459; *Linse* v. *Zastrow,* 63 Mont. 241, 246, 207 Pac. 119.) Moreover, a contract must be considered as a whole, and should receive such interpretation as will give effect to the intention of the parties at the time of contracting, the intention to be gathered from the entire agreement, its substance rather than its form being controlling. (13 C. J. 525; *Ferry & Co.* v. *Forquer,* 61 Mont. 336, 29 A. L. R. 642, 202 Pac. 193.)

MR. JUSTICE STARK delivered the opinion of the court.

On April 5, 1923, the plaintiff, John Lee, and the defendant, Lee Gold Mining Company, entered into a contract with the individual defendants named in the complaint herein, who alone will be hereafter referred to as the defendants, containing the following recitals, agreements and covenants, which for convenience of reference are numbered from 1 to 12.

(1) That it is made between the Lee Gold Mining Company, a corporation having a capital stock of $500,000 divided into 50,000 shares of the value of $10 each, and John Lee as par-

ties of the first part, and the defendants as parties of the second part; and

(2) That, if the second parties shall perform the covenants on their part, the first parties are to convey and issue to them 24,500 shares of the capital stock of the Lee Gold Mining Company; and

(3) That the parties of the first part are desirous of obtaining financial assistance to operate their mining claims which are described.

(4) That John Lee agrees to clear up the titles of the Lee Gold Mining Company; and

(5) That John Lee, who now holds the deeds, is to have same assigned to and become the property of the Lee Gold Mining Company when second parties have subscribed or caused to be subscribed $10,000 of the capital stock of such corporation.

(6) Parties of the second part agree to sell stock and raise $2,000 in cash, if possible, by May 15, 1923, which money and all other money raised on the sale of stock shall be used for development of the mine and construction of concentrating plant and other necessary machinery.

(7) It is also understood and agreed, by all parties hereto, whenever parties of the second part have subscribed stock to the amount of $10,000 the 24,500 shares of capital stock shall be issued to the parties of the second part.

(8) "Parties of the second part hereby agree to raise all the money necessary for the development of the mine and construction of concentrator up to 100 tons daily capacity, with all necessary machinery and equipment required for the 24,500 shares of stock which they are to receive from the Lee Gold Mining Company."

(9) "It is also agreed that party of the first part will locate the additional claim necessary to be held by the company for the protection of the other claims."

(10) "It is also agreed and understood by all the parties hereto the time for which to raise the money required for the

construction of the concentrating plant, and such other machinery as may be necessary to operate is to be one year from the date whenever it is proven that the development of the mine and ore veins are sufficient in value and quantity to warrant the construction of said concentrator and other machinery required.''

(11) ''It is also agreed and understood that of the 25,500 shares of capital stock of the Lee Gold Mining Company, which shall be issued to John Lee in payment for the mining claims above mentioned, payment in stock is to be made as follows: Twenty thousand shares shall be issued to John Lee at the time specified heretofore when the quitclaim deeds are turned over to the Lee Gold Mining Company; 5,500 shares of the capital stock of the Lee Gold Mining Company shall be held as treasury stock, but shall not be sold for any purpose whatever, and shall be held in the treasury of the company as 'treasury stock' until mining property is paying dividends, then, it is further agreed and understood, these 5,500 shares of stock shall become the property of John Lee.''

(12) ''The above covenants and agreements depend entirely upon the development of the property. If the development proves satisfactory, then this contract shall be binding and in full force until both parties have fully performed their duties as set forth.''

On August 14, 1923, the plaintiff brought this action for the purpose of having this contract annulled for the reason, as stated in paragraph 9 of his complaint, that it is ''so vague and indefinite that it does not set forth the purpose of the parties, and it cannot be understood or ascertained therefrom with any reasonable degree of certainty what is meant or intended by said contract, and that such contract is lacking in mutuality, and is entirely void and of no force and effect.''

Although the complaint undertakes to set up numerous other [1] grounds for equitable relief, they will be disregarded for the reason that they are not argued in appellant's brief; coun-

sel having stated that the main question involved in this suit is whether the above contract is valid.

The prayer of the complaint is very comprehensive. Amongst other things it asks that the contract in suit be declared to be null and void; that it be adjudged that the title to the mining claims involved, standing upon the record in the name of the Lee Gold Mining Company, is held by it for the sole benefit of plaintiff; that defendants be enjoined from working on said claims or exercising any control over them or interfering with plaintiff's operation or development thereof during the pendency of the suit or thereafter; and that plaintiff be decreed to be the sole owner of all of the stock of the Lee Gold Mining Company and the only person entitled to the custody of the books and records thereof.

Upon the filing of the complaint an order was issued, requiring the defendants to show cause why the plaintiff should not be granted the temporary injunctive relief asked for. On the return day of this order the defendants, except the defendant Kimball, appeared and filed a joint answer. Kimball answered separately. It is not necessary to set out the allegations of the answers; it being sufficient to state that they raised an issue upon all of the allegations of the complaint which tended to show that the plaintiff was entitled to equitable relief. A great amount of testimony was introduced at the hearing on this order to show cause, at the conclusion of which all of the parties stipulated that the case might be considered as submitted for final determination upon the merits on the testimony so introduced. The court thereafter made findings of fact to the effect that on April 5, 1923, John Lee was the owner of all of the capital stock of the Lee Gold Mining Company, and on that day entered into the contract in suit; that the defendants sold stock, and raised $2,000 in cash before May 15, 1923, and caused stock to the amount of $10,000 to be subscribed before May 15, 1923, and thereupon the plaintiff transferred and conveyed the mining claims in question to the company; that on

April 19, 1923, the defendants began operations, installed and paid for machinery, and did work in developing the mining claims, including the expenses incidental thereto, to the amount of $12,000; that on said date 24,500 shares of the stock of the company were issued to the defendant Leh, as trustee for all of the defendants, said shares to be sold by defendants and the money derived therefrom to be used in the development of the claims and for the construction of a concentrator; that 3,500 shares of this stock had been sold by the defendants to third parties; that plaintiff had not surrendered or returned, or offered to surrender or return, to the defendants all that had been received by him under the contract, nor had he placed, or offered to place, the defendants *in statu quo;* that the evidence did not show that the development of the claims was sufficient to justify the building of a concentrator thereon; and, except as above stated, that none of the allegations of the complaint were true. As a conclusion of law from the foregoing findings the court determined the issues in favor of the defendants, and ordered the case dismissed upon the merits. Judgment was entered in accordance with the findings of the court, and from it the plaintiff has appealed.

In reference to the testimony given at the hearing it is only necessary to say it was ample to sustain the findings of fact made by the court, and in addition thereto disclosed that down to the time of the hearing the defendants were diligently pursuing the work of developing the mining claims in accordance with the terms of the contract.

It is seriously urged by appellant that the provisions of paragraph 12 of this contract render the entire agreement so vague, ambiguous and uncertain, and show that it is so indefinite as to time of performance and lacking in mutuality, as to render it void.

In the interpretation of this contract we must call to our [2] aid certain elementary rules. The intention of the parties is to be pursued if possible. (Sec. 10520, Rev. Codes 1921.) This intention is to be gathered from the entire agree-

ment, not from particular words or phrases or disjointed or particular parts of it. (*Stockton Savings & Loan Soc.* v. *Purvis,* 112 Cal. 236, 53 Am. St. Rep. 210, 44 Pac. 561.) "The subject matter of the contract and the purposes of its execution are material to the ascertainment of the intention of the parties and the meaning of the terms used, and when they are ascertained they must prevail." (5 R. C. L., sec. 226, p. 836.) It must be so interpreted as to give effect to the intention of the parties at the time of contracting. (*Ferry & Co.* v. *Forquer,* 61 Mont. 336, 29 A. L. R. 642, 202 Pac. 193.) The contract must be viewed from beginning to end, and all its terms must pass in review; for one clause may modify, limit or illuminate the other. (5 R. C. L., sec. 227, p. 838.)

With these elementary rules of interpretation in mind, we [3] proceed to a consideration of paragraph 12 of this contract for a determination of what covenants and agreements thereof "depend entirely upon the development of the property," and what is meant by the phrase "if the development proves satisfactory."

Clearly, the covenants and agreements referred to are not those contained in paragraphs 4, 5, 6, 7, 9, and that portion of paragraph 11 which provides for the issuance and delivery of 20,000 shares of stock to plaintiff, and the retention of 5,500 shares for his sole benefit, since they are all clear, definite and to be performed without reference to the development of the property. So the reference can only be to paragraphs 8 and 10, which provide that the defendants, in consideration of 24,500 shares of stock, shall furnish money to develop the mine and the construction of a concentrator and furnishing the other machinery required, and to that part of paragraph 11 which provides that 5,500 shares of stock shall become the property of the plaintiff when "the property is paying dividends."

Thus the only covenants left to depend upon the "development of the property" are the construction of the concentrator and furnishing the machinery, as provided in paragraphs

8 and 10, and the issuance and delivery of 5,500 shares of stock to plaintiff, in accordance with paragraph 11. The expression, "if the development proves satisfactory," must refer back to and be read in connection with paragraph 10, and means that the development will be satisfactory "whenever it is proven that the development of the mine and ore veins are sufficient in value and quantity to warrant the construction of said concentrator and other machinery required." When this fact is proven as a part of the consideration for the 24,500 shares of stock issued to the defendants in accordance with paragraph 7, they are obligated to raise the money necessary for the construction of a concentrator of 100 tons daily capacity, with all necessary machinery and equipment (paragraph 8) within a period of one year (paragraph 10), and when the property is paying dividends the 5,500 shares of stock must be issued and delivered to plaintiff (paragraph 11).

Counsel argues that the contract is void for indefiniteness, because it does not provide how much mining the defendants are obligated to do, of what the work will consist, or how long it will continue. While the contract is somewhat indefinite as to the amount of development work which the defendants are required to do thereunder, in view of the fact that they were diligently pursuing this work and had expended upwards of $12,000 in that behalf before the commencement of this suit, it is our opinion that the contract should not be declared void upon this contention of counsel.

Considering all of the provisions of this contract together in the light of its expressed purpose to furnish financial assistance for the development of plaintiff's mining claims, it seems to us that the foregoing interpretation gives full effect to the intention of the parties at the time they contracted, and that their respective obligations as therein expressed are sufficiently definite and not lacking in mutuality.

Counsel for appellant also urges that the contract cannot be [4, 5] sustained, because it does not provide a specified time within which defendants should begin their operations and

prosecute the development of the work to completion. As a matter of law the omission of a more definite provision on that subject would not have any effect on the contract, since section 7548, Revised Codes of 1921, provides that when no time is specified for the performance of an act required to be performed, a reasonable time is allowed. As a matter of fact this point has no bearing upon the controversy presented in this record, since it clearly appears that the defendants commenced to carry out their obligations under the contract immediately after its execution, and were pursuing the same down to the time of the commencement of the suit.

Upon a review of the whole case we are of opinion that the judgment of the trial court in denying the plaintiff the relief prayed, was correct, and it is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES RANKIN and HOLLOWAY and HONORABLE WM. H. POORMAN, District Judge, sitting in place of MR. JUSTICE GALEN, disqualified, concur.