OREM, Respondent, *v.* HANSEN PACKING COMPANY, Appellant.

(No. 6,829.)

(Submitted November 7, 1931.   Decided January 4, 1932.)

[7 Pac. (2d) 546.]

*Messrs. Krem'er, Sanders & Kremer,* for Appellant, submitted a brief in support of its assignments of error, and one in reply to Respondent's argument upon her cross-assignments of error; *Mr. Louis P. Sanders* argued the cause orally.

*Mr. Francis A. Silver,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This action was brought to recover. $7,500 as the purchase price of certain cattle and other property sold by plaintiff to

defendant, resulting in a verdict and judgment for plaintiff. Defendant's motion for a new trial was denied, and it appealed from the judgment.

The complaint is based upon a written contract dated November 20, 1929, in which it is recited that the total consideration for the sale of the property, specifically described, was $7,913, of which $413 was paid in cash and the balance of $7,500 was to be paid "on or before February 12, 1930." The complaint alleges demand and nonpayment.

The defendant, by amended answer, admits the making of the written contract set out in the complaint, but alleges that it does not contain all the terms and conditions of the contract. In general, the amended answer sets out that, contemporaneously with the execution and delivery of the contract pleaded in the complaint, there was a separate instrument in writing, which will hereafter be referred to at greater length, which constituted a part of the contract between the parties, and which had the effect of changing the due date of the $7,500 balance of the contract price, by making it depend upon the happening of certain contingencies therein specifically alleged and which have not yet come to pass, and hence that the sum of $7,500 is not yet due and payable. The prayer of the amended answer is that prosecution of the action be abated until the happening of the contingencies on which the due date depends.

By stipulation of the parties, the affirmative allegations of the amended answer were deemed denied without the necessity of a reply.

When the case was called for trial, defendant made application for a continuance, based upon the absence of Walter Hansen, president and general manager of defendant, a material witness. This motion was supported by affidavits, one of which, made by John Sullivan, set out what the absent witness would testify to if present at the trial. Plaintiff, to prevent the continuance, admitted that, if Hansen were present, he would testify to the matters set forth in the affidavit.

Under the circumstances it was proper to deny the motion. (Sec. 9332, Rev. Codes 1921.)

Defendant's other assignments of error raise the question of the right of the court to submit the case to the jury and to refuse to abate the action in view of the evidence introduced in support of the allegations of the amended answer. It becomes necessary, therefore, to review the evidence of the defendant, including that which plaintiff admitted the absent witness would testify to if present at the trial.

Sullivan's affidavit in support of the motion for a continuance recited, in substance, that Walter Hansen, representing defendant, told plaintiff that he did not desire to purchase the cattle, as a great many were stock cattle and not in condition for immediate butchering, and that defendant was already well supplied with cattle; that Hansen advised her to have her brother Francis A. Silver look after her interests, which she did; that Hansen advised affiant, and the latter advised Silver, that defendant would purchase the cattle on the following conditions: That at the time the Montana Horse Products Company was a Montana corporation, incorporated by the defendant company and the stock of which was controlled by defendant company; that Hansen was the president of both companies; that the Montana Horse Products Company had shipped a large number of range horses from various stations in Montana to Butte over the line of the Great Northern Railway Company, and that for such shipments it had paid excessive freight charges amounting to more than $7,500; that it had made claim against the railway company for repayment thereof, and that the railway company had agreed and promised, upon an entry of an order by the Railway Commission of the state of Montana to the effect that the freight rate was excessive, to return to it the excessive freight so collected; that Hansen instructed affiant to advise plaintiff and her agent, Silver, that defendant would buy the cattle provided the time of payment was deferred until the railway company made payment of the excessive freight charges to the Montana Horse Products Company.

The affidavit further recites: "Affiant states from his general recollection of conversations had with the said Hansen he would testify that if it should be finally determined in court proceedings that if the Great Northern Railway Company was not liable to pay said excessive freight in the amount named, then and in such event only was the said balance of $7,500 to be paid plaintiff under said contracts by the defendant in this action," and that plaintiff and her agent, Silver, were cognizant of those facts; that it was the belief of defendant and its officers, and of the Montana Horse Products Company and its officers, as well as of Silver, that the railway company would make repayment of the freight charges upon the entry of the order by the Board of Railroad Commissioners, which order was made on November 4, 1929, but for some unknown reason it retracted its promise to do so; that thereupon the Montana Horse Products Company instituted, and with due diligence prosecuted, an action in court to recover the excessive freight paid, and made demand upon plaintiff and her agent for an extension of the due date of the sum of $7,500, which plaintiff refused.

John Sullivan, the defendant's bookkeeper, testified that he was present when the contract set out in the complaint was made, and knows of his own knowledge what transpired on November 20, 1929; that Defendant's Exhibit 1 was prepared by Silver, plaintiff's agent and attorney, and was delivered to defendant at the same time as the contract set out in plaintiff's complaint. Defendant's Exhibit 1 was introduced in evidence over plaintiff's objection, which exhibit, so far as material, is as follows:

"November 14, 1929.

"Subject: Flora Orem-Hansen Packing Company Agreement.

"Hansen Packing Company, Butte, Montana.

"Gentlemen: Attention Mr. John Sullivan. Referring to our conversation of yesterday, regarding the draft of the agreement submitted to you in connection with the purchase of Mrs. Orem's cattle and hay and lease of her holdings near Woodin, Montana:

"This will confirm my oral statement to the effect that the date of Feb. 12, 1930, was fixed as a date by which the claim of the company against the Great Northern would be settled and paid in full unless there was some unreasonable and unforeseen delay, but that it is agreeable to us, that it be understood that if further extension of due date be required, it will be granted. Any obligation must have a date of maturity if it is legal, and, as indicated, it was considered that Feb. 12, 1930, would be a proper and reasonable one under the circumstances.

"Mr. Pewters will not be in the city until Saturday, but I have had his chief clerk take up with St. Paul the matter of promptly paying the claim and as soon as I am advised of anything in this connection, I will communicate with you. ❋ ❋ ❋

"FRANCIS A. SILVER.

"Approved Nov. 20, 1929.

"FLORA OREM."

The witness testified, and plaintiff admitted, that the word "claim" in the exhibit referred to the claim of the Montana Horse Products Company against the Great Northern Railway Company for alleged excessive freight paid by the Montana Horse Products Company to the railway company. He further said that the contract set out in the complaint was prepared by plaintiff's attorney, Silver, and submitted to the witness as agent for defendant about November 15, 1929; that he retained it until November 20, objecting during that time to the due date of December 12, 1929, then written in the contract. The first page was later rewritten so that it bears date November 20, and the due date was changed to February 12, 1930. Defendant's Exhibit 1 was also prepared by plaintiff's attorney, and was in the possession of the witness from November 15 to November 20.

On November 20 the witness and Silver met in Mr. Sanders' office, and Exhibit 1 was amended by striking out as the due date "Dec. 12, 1929," and inserting "Feb. 12, 1930." At the insistence of the witness, Defendant's Exhibit 1 was ap-

proved by plaintiff. This was after the formal contract set out. in the complaint was signed, but both instruments were delivered to defendant at the same time on November 20, 1929. He said the extension referred to in the letter "took care of just such a contingency as did arise, that is, the refusal of the Great Northern Railway Company to pay right away, and we were not to pay until the Great Northern Railway claim was paid." When asked, "What was your understanding, if there was one, as to what would happen in the event the Great Northern Railway Company did not pay the claim?" he said, "Well, Mrs. Orem would be paid when it was determined, when they had taken proper means through the courts to make them pay it, if the Great Northern refused to pay, and were upheld by the courts, Mrs. Orem surely would be paid by the Hansen Packing Company." But, on cross-examination, when interrogated by Silver on this point, he said: "I don't believe there was any discussion between you and myself in Captain Sanders' office or any other place with reference to the probability of suit being filed by the Montana Horse Products Company to collect this claim against the Great Northern Railway; it wasn't discussed that I remember. It was my opinion at that time that the claim was to be paid, and I think it was Walter Hansen's opinion, based upon his talk, and I believe it was your opinion. There was no discussion of any suit being filed by the Montana Horse Products Company against the Great Northern Railway. I feel confident of that. The whole agreement and this letter of November 14th, approved on November 20, was upon the basis assumed by all parties that the money would be forthcoming from the Great Northern to the Montana Horse Products Company reasonably in the near future."

Substantially all of defendant's evidence went in over the objection of plaintiff. It was not directly contradicted. Plaintiff seeks to avoid its effect by contending that the evidence was improperly received. She has made cross-assignments of error raising the question of its admissibility. Her main contention on this point is that the evidence tends to

vary the terms of the written contract and for that reason should have been excluded, and that, if excluded, the errors assigned by defendant have been compensated by the error against plaintiff, and that therefore, under the rule prescribed in section 9751, Revised Codes 1921, the judgment should not be reversed.

Plaintiff contends that Defendant's Exhibit 1 was inadmissible by virtue of the provisions of section 10517, Revised Codes 1921, which in part provides: "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing. * * * "

Defendant contends, and we think correctly, that the two ▮ instruments must be considered together. This is so because of section 7533, Revised Codes 1921, which provides: "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." And section 7569 declares: "A contract in writing may be altered by a contract in writing."

The contract was not finally concluded until November 20, 1929, and, since the two writings were delivered at the same time, the one expressly referring to the other, they must be considered together in ascertaining the intention of the parties. (*Lyon* v. *Dailey Copper, M. & S. Co.,* 46 Mont. 108, 126 Pac. 931; *Cooper* v. *Goble,* 77 Mont. 580, 252 Pac. 362.) And this is so even though one of the writings is a letter referring to the formal agreement, as here. (*Gould* v. *Magnolia Metal Co.,* 207 Ill. 172, 69 N. E. 896; *Miers* v. *Fuller Co.,* 167 Ill. App. 49; *New York Metal Ceiling Co.* v. *City of New York,* 133 App. Div. 110, 117 N. Y. Supp. 632; *Interstate Const. Co.,* v. *United States F. & G. Co.,* 207 Mich. 265, 174 N. W. 173.)

But plaintiff contends that the letter, Defendant's Exhibit 1, is not a contract because it is signed by only one party, and hence is lacking in mutuality. It is signed, however, by

the only party affected and bound by it, and it constituted a written offer by plaintiff. The offer was accepted by defendant, which relied and acted upon it, as it had a right to do. Defendant's Exhibit 1 constituted a part of the written contract between the parties with respect to the due date of the balance payable by defendant under the contract. (See *Ming* v. *Woolfolk,* 3 Mont. 380, and *Cooper* v. *Goble,* supra.) The agreement to extend the due date, being in writing, presents a different situation from the oral promises in the cases of *Armington* v. *Stelle,* 27 Mont. 13, 94 Am. St. Rep. 811, 69 Pac. 115, and *Kelly* v. *Ellis,* 39 Mont. 597, 104 Pac. 873, and comes squarely within the case of *Lyon* v. *Dailey Copper, M. & S. Co.,* supra.

The principles of estoppel will not permit one party to induce another to enter into a contract by a written agreement to extend the time of performance stated in that contract and then insist upon the time of performance as written. (*Longfellow* v. *Moore,* 102 Ill. 289; *Kingston* v. *Walters,* 16 N. M. 59, 113 Pac. 594.) Defendant's Exhibit 1 was properly admitted in evidence as a part of the contract between the parties.

Plaintiff asserts that Exhibit 1 was inadmissible because void for uncertainty within the rule announced in the cases of *Ahlstrom* v. *Fitzpatrick,* 17 Mont. 295, 42 Pac. 757, and *Burton* v. *Kipp,* 30 Mont. 275, 76 Pac. 563. In those cases, unlike this, the agreements for an extension of the time of payment depended upon contingencies which might never arise. Here the letter, when read in connection with some of the oral evidence properly admissible to explain its ambiguity (secs. 10517 and 10521, Rev. Codes 1921), shows that the contingency agreed upon as determinative of the due date was definite and certain, viz., the payment by the railway company of the claim to the Montana Horse Products Company, or a judicial determination that the railway company was not liable therefor.

"The duration of a contract may be made dependent upon the expiration of a period of time, or upon the completion of

a given undertaking, or the happening of some event, all of which in turn may be certain or uncertain as to the date when the undertaking may be completed, or the event may happen." (*City of Superior* v. *Douglas County Tel. Co.*, 141 Wis. 363, 122 N. W. 1023, 1027.) No time was specified within which a judicial determination should be had, but in such cases a reasonable time would be allowed. (Sec. 7548, Rev. Codes 1921; *Lee* v. *Lee Gold Min. Co.*, 71 Mont. 592, 230 Pac. 1091; *Noland* v. *Bull*, 24 Or. 479, 33 Pac. 983; *Bryant* v. *Atlantic Coast Line R. Co.*, 119 Ga. 607, 46 S. E. 829.)

The evidence shows that action was instituted by the Montana Horse Products Company against the railway company in due time, and that it is being prosecuted with reasonable diligence. In view of the allegations of the answer tending to explain what was meant by the extension agreement, it was properly admissible in evidence, but whether those allegations were sustained by the proof will be hereafter discussed.

It is next contended by plaintiff that there was no consideration for the extension agreement. We do not so view the transaction. Defendant, according to the evidence, would not have purchased the cattle except for the extension agreement. The consideration for the extension agreement was the obligation of defendant to buy the cattle, which it would not have assumed except for the agreement with respect to the due date of the $7,500. In other words, since the letter constituted a part of the contract, it was supported by the consideration supporting the contract. (*Miers* v. *Fuller Co.*, supra; and see *Alexander* v. *Lewes*, 104 Wash. 32, 175 Pac. 572.)

Plaintiff contends that the jury was warranted in rejecting the evidence of defendant with respect to the meaning of Exhibit 1. Her contention is that all parties interested in the contract thought and assumed the Great Northern Railway Company would pay the claim of the Montana Horse Products Company without court action, and hence that evidence as to what the parties intended in case of its refusal to do so is unworthy of belief. The record does show that all parties assumed that the railway company would pay the

claim without controversy. That defendant's officers thought so is shown by the letter written by the Montana Horse Products Company to the board of railroad commissioners, signed by Walter Hansen, as follows: "The railroad company is ready and willing to pay the claim as soon as they can get an order from the railroad commissioners. * * * We would like to know why this should be assigned for a public hearing especially when the railroad company who received this money are anxious and willing to pay it back to the party who gave it to them."

Sullivan, who closed the transaction for defendant, on his cross-examination said there was nothing said at any time between him and Silver in Captain Sanders' office, or any other place, about the probability of suit being filed by the Montana Horse Products Company against the railway company. The jury had a right to infer that, if this fact, now pressed as of such vital importance, was in contemplation of the parties, some reference thereto would have been made at the time the agreement was finally consummated. Numerous letters were introduced in evidence, written by Silver to the defendant and its counsel, Kremer, Sanders & Kremer, commencing on February 10, 1930, and extending to May 12, 1930, all relating to the payment of this claim. Only two replies were received by Silver, neither of which made any reference to the contention now made that the due date had not arrived because of the undetermined court action then pending against the railway company and instituted by the Montana Horse Products Company.

Under the circumstances, the jury was warranted in believing that the parties never contracted with reference to such a contingency as the refusal of the railway company to pay the claim without court action. (See 23 C. J. 54.) This issue was submitted to the jury by the following instruction: "You are instructed that the Hansen Packing Company admits that it must pay to the plaintiff the amount for which plaintiff is suing, but offers as a defense that the sum sued for is not yet due, although the Hansen Packing Company admits

and states that it will pay said sum when the same becomes due. If you believe from the evidence that under the contract and agreement the said sum sued for is not due, then even though the Hansen Packing Company must ultimately pay said sum, your verdict should be for the defendant in this action.''

The court did not err in not giving defendant's offered instruction submitting this issue more specifically, in view of the instruction given, which sufficiently covered the subject.

Since the jury was warranted in finding that there was no understanding between the parties covering the contingency of a possible court action, but that their dealings were had in contemplation of reasonably prompt payment by the railway company without court action, and since the railway company refused payment prior to February 12, 1930, the action by the Montana Horse Products Company having been instituted on January 29, 1930, it was warranted in finding that the claim was due on February 12, as it did by returning a verdict with interest from that date.

The judgment is affirmed.

ASSOCIATE JUSTICES GALEN, FORD and MATTHEWS concur.

MR. CHIEF JUSTICE CALLAWAY: I concur, but I do not agree with all that is said in the opinion. I do not agree that any evidence was admissible respecting a judicial determination of the claim of the Horse Products Company against the railway.

Rehearing denied February 5, 1932.