W. J. LAKE & CO., RESPONDENT, *v.* MONTANA HORSE PRODUCTS CO., APPELLANT.

(No. 7,866.)

(Submitted October 5, 1939.  Decided December 7, 1939.)

[97 Pac. (2d) 590.]

*Mr. P. E. Geagan,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. John K. Claxton,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal by defendant from a judgment entered on a verdict in favor of plaintiff. The action was originally brought against the Hansen Packing Company as well as against the Montana Horse Products Company, but at the trial plaintiff voluntarily dismissed as to the Hansen Packing Company. Hereafter, in referring to defendant, we shall be understood as meaning the Montana Horse Products Company.

The complaint sets forth that plaintiff purchased from defendant certain products to be shipped from Butte to various points in the state of Washington during the year 1930; that the defendant agreed at the time of selling the products that the freight rates to the points of delivery were excessive, and that it would prosecute claims for refunds of the excessive freight charges and, upon recovery thereof, would allow plaintiff one-half; that plaintiff purchased the products on the strength of the agreement and paid the excessive freight charges; that defendant successfully prosecuted a claim for refund against the rail carriers in excess of $2,400, the exact amount being to plaintiff unknown, and has failed to account to plaintiff for one-half or any part thereof.

The answer of defendant admits the essential allegations of the complaint so far as 360 tons or twelve cars of products were concerned, save and except it alleges that plaintiff was only to have one-half of the excess freight charges after deducting the expenses of recovering them, and that as applied to the 360 tons, the excess freight charge recovered was $900, the cost of recovering it $225, leaving a balance of $675, and that plaintiff was given credit for one-half thereof. It also sets forth an alleged counterclaim, but since the jury found against defendant thereon on conflicting evidence, we shall not allude to it further.

The first question presented is whether the court erred in admitting, over defendant's objection, copies of letters written by plaintiff and which it claimed were mailed to defendant. It is contended that no foundation was laid justifying their admission. Plaintiff, to prove its case, offered in evidence an order of June 12, 1930, for twelve cars of meat scrap. Plaintiff's witness, L. E. Branchflower, testified that he had a telephone conversation with Walter Hansen, who, the record shows, transacted all the business for the Montana Horse Products Company, relative to the twelve cars of meat scrap, at which time they agreed to "handle twelve cars of this horse meat scrap at the price indicated in the confirmation for shipment in accordance with the terms of confirmation on freight allowed

Seattle basis, and I think $59 per ton is right.  *  *  *  That we would receive in return in addition one-half of any freight rebates or adjustments that might be secured which would be $1.25 a ton to us."

According to this witness, after this conversation took place plaintiff made out a formal confirmation sheet or order in duplicate, containing details regarding the shipping instructions. It contained a statement, "Buyer to receive one-half of freight rate change, if any effective." This was mailed to defendant in Butte on June 12, 1930. On June 16 plaintiff received a letter from defendant signed by J. T. Sullivan and dated June 13, 1930, notifying plaintiff that one car had been shipped and that defendant company was drawing on plaintiff "for the full amount of the invoice, $1,770.00." Similar letters were received on June 14, 16, 19, 23, 28, 30, and July 7, 12, 18 and 24, regarding the other eleven cars.

As above pointed out, as to these cars there is no controversy here, except that defendant contends it had a right to deduct from the refund the cost of procuring it, whereas plaintiff contends that it was entitled to one-half thereof without deduction of cost of effecting its collection. The main controversy hinges upon proof of twenty additional cars, the evidence relating to which is as follows:

Branchflower, testifying for plaintiff, said that on June 25, 1930, he prepared a confirmation or order for twenty cars of meat scrap which was enclosed with a letter to defendant. The letter read:

"June 25th, 1930

"Montana Horse Products Company,
     "Butte, Montana:
                "Attn. Mr. Walter Hansen.
"Gentlemen:

"After making shipment of the cars of Vitamont Meatscraps previously ordered out, please make the following shipments, drawing on us at Seattle as usual.

      30 tons—Spokane, Washington—Great Northern
      30 tons—Yakima, Washington—Northern Pacific

"Mr. Branchflower handed the enclosed contract to the writer, covering 20 cars (600 tons) of Vitamont Meatscraps purchased from you for July/August/September delivery as per his 'phone conversation with you, and advises that we are to share fifty per cent in any freight refunds that may be made on these cars as well as the twelve cars purchased on June 12th, due to the present rate being reduced back to the old rate of 25½c per 100 lbs. We are working with you in an effort to secure this lower rate.

"Would you please advise the writer if it is your intention to have the 25½c rate retroactive or if you intend filing reparation claims on each car after the rate is published. Would like this information so that we will know how to work on this end with the carriers.

"Yours very truly,
"W. J. LAKE & Co., INC.
"R. V. CORNELL, Secretary."

Demand was made upon defendant to furnish the original letter of June 25, but defendant asserted that it did not have the letter. A copy of the letter was introduced in evidence, and defendant assigns error in admitting it, contending, as above stated, that there was not a proper foundation for its admission. Several specifications of error raise the same point as to other letters written by plaintiff to defendant in 1932, which requested information from defendant as to the progress being made to secure the refund in freight charges.

Defendant's contention is that the proof was not sufficient to show that the letters were duly directed or mailed so as to give rise to the presumption that they were received in the regular course of the mail, within the meaning of subdivision 24, section 10606, Revised Codes, as construed in *Meagher* v. *Harrington*, 78 Mont. 457, 254 Pac. 432, and *Renland* v. *First Nat. Bank*, 90 Mont. 424, 4 Pac. (2d) 488.

There was evidence showing that the letter above quoted, and order for twenty cars of meat scrap, were enclosed together in an envelope which was addressed to the Montana Horse Products Company, at Butte, Montana. The postage was paid

and the envelope had stamped on it the return address. The witness Branchflower at first testified that he did not see the envelope deposited in the mails; later he said that he personally put the letter in the United States mail box outside the building at Seattle. The proof was ample to show that the letter was properly mailed so as to raise the presumption that it was received in the regular course of the mails. Hence, it was properly admitted in evidence. Additionally, it was shown that shipping instructions contained in the letter were carried out, and also it was conceded by defendant that it received the written order; hence, if the jury believed that the written order accompanied the letter, then the letter must also have been received.

As to the other letters, defendant contends that there was no evidence on the vital point as to whether they were placed in envelopes addressed to the defendant in Butte. On the face of the letters they were directed to "Montana Horse Products Company, Butte, Montana, Attention Mr. R. H. Paull." We need not determine whether the letters, other than that of June 25, 1930, were properly received in evidence. Were we to hold that they were inadmissible, it would not follow that a new trial must be had. It appears to us that defendant's rights were not prejudicially affected by such letters. As above noted, the contract relied upon by plaintiff was amply established by the letter of June 25, 1930, which the evidence shows accompanied the order admittedly received by defendant. The letters in question tended to corroborate the other evidence, so far as plaintiff's right to freight refunds on the shipments under the order of June 25, 1930, was concerned. Had the defendant submitted some substantial evidence to refute the existence of such a contract, then the corroborating evidence, if inadmissible, might be said to have been prejudicial, for it might then have influenced the jury to decide for plaintiff, whereas the jurors might otherwise have been warranted in finding for defendant. But as we view the evidence, there was no substantial evidence submitted by defendant to refute the exist-

ence of the contract relied upon by plaintiff, and hence on that issue there was room for but one verdict.

The evidence submitted by defendant shows: "Mr. Hansen done the selling of this meat meal to Lake & Company and I think practically all the business done with Lake & Company on behalf of the Montana Horse Products was transacted by him." Mr. Hansen was not called as a witness, and neither was Mr. Paull to whose attention the letters in question were all addressed. The only witness called by defendant was Mr. Sullivan, an accountant for defendant. He admitted that the order of June 25, 1930, had been received and executed by defendant. He was asked what accompanied the order, and said, "Nothing that I know of. The files only showed this." He said he never had seen the letter of June 25, 1930, until it was presented at the trial. He testified: "I stated that we had no letter in our files similar to plaintiff's Exhibit No. 5, which is the letter dated June 25, 1930. I know that I didn't find any. My answer is based on the fact that I looked and I didn't find it." He further stated: "Nothing in our records show they had anything coming on the 20 cars."

The letter of June 25, 1930, as above stated, was addressed to Montana Horse Products, Attention Mr. Walter Hansen. To meet the contention that Hansen would ordinarily be the one who should speak for the company with respect to the letter, the witness Sullivan testified: "I was in touch with all of the business of the Montana Horse Products Company from time to time. In a clerical way things were turned over to me to execute. If Mr. Hansen got an order he turned it over to me and saw that it was executed." He further said: "It was my duty to compare orders and compare any writings that came in, and had there been any case where there were a difference, this one not excepted, I would have taken it up with Mr. Hansen and found out so we could correct it immediately. I would have found out if there was any other deal other than the deal made in the confirmation. I think I would have recollected."

The most that this evidence shows is that the letter of June 25, 1930, never came to the attention of Mr. Sullivan. There was no evidence refuting the presumption that it was received by Mr. Hansen for the Montana Horse Products Company. Hence, so far as the existence of the contract relied upon by plaintiff is concerned, the jury could not, under the evidence, have found for the defendant. Therefore, the letters, other than that of June 25, 1930, could not have prejudiced any right of defendant.

What we have already said disposes of the further contention made by defendant that the court should have stricken the letters upon defendant's motion. The court did not err in refusing to do so.

The jury returned a verdict for $1,176.25 and the court entered judgment for that amount together with interest in the sum of $351.30 from January 1, 1933, to the date of the verdict. Defendant assigns as error the action of the court in adding interest.

The question of interest was not submitted to the jury in the instructions. The only instruction given with respect to the amount of the verdict was one offered by plaintiff advising that if the jury found for plaintiff they should write into the verdict "such sum and amount as you may find from all the evidence in this case fairly represents one-half of the amount of such refunds." The verdict was in conformity with this instruction, since it represents the exact amount shown to be one-half of the admitted refunds.

Under the circumstances of this case there was nothing to submit to the jury with respect to interest, nor was there any waiver of interest by failure to incorporate it in the instructions to the jury. The facts which gave rise to the right to interest were undisputed and it became a mere matter of mathematical computation after the jury determined that plaintiff was entitled to the refund.

The complaint alleged that there was due to plaintiff as refunds the sum of at least $1,200 "together with interest thereon at the rate of six per cent. (6%) per annum from and after the

date of the receipt of said refunds, said date or dates being unknown to the plaintiff." This allegation was put in issue by the answer. The proof shows without controversy that defendant received the refunds from the railroads at various times during the year 1932. In fact, defendant's only witness testified: "We received refunds of $75 each on 31 cars and $27 on one car. Those are the 32 cars that are represented by the orders of June 20, 1930, and June 25, 1930, of Lake & Company. That should be June 12th and June 25th."

While there seems to be some conflict of authority as to the court's general power to add interest to the verdict, yet it seems to be well recognized that if the plaintiff is entitled to interest under statutory authority as a legal incident to his claim, and his claim is one which is certain or capable of being made certain by calculation, then the court may add the interest to the judgment when there is no controversy on the facts giving rise to the right to interest which should have been submitted to the jury. (*Engelberg* v. *Sebastiani*, 207 Cal. 727, 279 Pac. 795; *St. Louis, E. R. & W. R. Co.* v. *Oliver*, 17 Okl. 589, 87 Pac. 423, 10 Ann. Cas. 748; *Akin* v. *Jefferson*, 65 Tex. 137; *Hill* v. *Wilson*, 123 Or. 193, 261 Pac. 422; see, also, 72 A. L. R. 1150 and cases there cited.)

In *Engelberg* v. *Sebastiani*, supra, the court in considering this question under facts very similar to those here said: "The jury verdict of $7,003.39 for plaintiff was for the full amount prayed for, but made no allowance of interest, in regard to which the court had given no instruction. In the prayer of his complaint plaintiff asked for interest. Upon the pleadings and proof, plaintiff was entitled to interest by virtue of the provisions of section 3287, Civ. Code, from the dates his right to receive the several sums sued for became vested in him.  *  *  * Although it is the right of the parties litigant in an action where a trial by jury is had as a matter of right to have every triable issue of fact submitted to the jury, in the instant case, had the court instructed the jury as to the matter of interest, plaintiff was entitled as a matter of law to an instruction directing the jury that if they should find for plaintiff to allow in-

terest upon the demands in suit. Since the jury would be without right to disregard the court's direction, which would leave them no discretion in the matter, it can make no substantial difference to defendant whether interest is added to the judgment by the verdict of the jury rendered pursuant to the direction of the court, or by the court instructing the clerk to enter judgment for the amount of the verdict plus interest. In adopting the latter procedure, the court is usurping no function of the jury, for there is no issue of fact involved as to said interest." (See, also, *Wood* v. *Hazelet*, 77 Colo. 442, 237 Pac. 151; *Dean & Son* v. *W. B. Conkey Co.*, 180 Ill. App. 162; compare *Wyant* v. *Beavers*, 63 Okl. 68, 162 Pac. 732.)

Under the facts in this case, if the plaintiff be allowed to recover anything it would be entitled, as a legal incident, to recover interest from the time defendant received the refunds from the railroads. This right is statutory. (Secs. 8662 and 7725, Rev. Codes.) There is in such case no necessity for a previous demand. The rule is general that "when the debtor knows what he is to pay, and when he is to pay it, no demand is necessary to start the running of interest from the date the payment should have been made." (33 C. J. 237, note 61 and cases cited.)

The rule, of course, is different when the claim is based on an open account. (*Hefferlin* v. *Karlman*, 29 Mont. 139, 74 Pac. 201.) It may be said in passing that here it was conceded that plaintiff made formal demand for payment on December 1, 1932. Whether the refunds were all obtained prior to that date, the record does not show. Since, however, they were all received during the year 1932, they were then payable without demand, and the allowance of interest from January 1, 1933, was proper.

The case of *Butte Electric R. Co.* v. *Mathews*, 34 Mont. 487, 87 Pac. 460, is not at variance with what we now hold. In that case the facts involved condemnation proceedings and the damages arising by reason of the building of a street railway. The jury's verdict specified the total amount of the damages without mentioning interest, and the trial court added the interest from the time of entry of possession. This court held that the trial

court was powerless to interfere with the verdict, and quoted the principle of law that the judgment must follow the verdict. The facts in the *Mathews Case,* supra, justify the conclusion in that case, for there interest was attempted to be allowed prior to the time the commissioners made an appraisement of the damage and prior to the time plaintiff's right to anything became vested.

The defendant urges that the court was in error in not granting the motion for a nonsuit. It contends that the evidence shows that the plaintiff was not the real party in interest, and that it shows that Mr. Branchflower, and not the plaintiff, was the owner of the claim against the defendant. We do not so view the testimony. The evidence bearing upon the point was brought out on cross-examination of Mr. Branchflower and was to the effect that while he was to get the ultimate benefit of the collection of a judgment, yet he directly testified that "if this money is recovered or any portion of it recovered in this action it will go to W. J. Lake & Company I suppose and my settlement or arrangement will be with W. J. Lake & Company," and that "W. J. Lake & Company is bound to collect this thing every way possible," and further, "No, there was no assignment." This evidence does not show that Mr. Branchflower was the real party in interest in maintaining this suit. It does not establish that plaintiff is not the real party in interest.

Contention is made that the evidence is insufficient to support the verdict. With this contention we do not agree.

Defendant assigns error in the giving of instructions. Complaint is made of instruction No. 14, reading: "You are instructed that all papers, agreements or other instrument made by the parties at the same time and relating to the same subject matter, are to be considered by you as constituting one contract, provided you find from a preponderance of all the evidence that such papers or instruments were made by the same parties and at the same time and relate to the same subject matter." This instruction was evidently directed at the order and letter of June 25, 1930, which according to the evidence were

both sent to the defendant in the same envelope. The instruction was proper. (*Orem* v. *Hansen Packing Co.*, 91 Mont. 222, 7 Pac. (2d) 546, and cases therein cited.)

Complaint is made of other instructions given. We have considered these contentions, but find that the jury was properly instructed on all features of the case.

Finding no reversible error in the record, the court properly denied the motion for new trial.

The judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ERICKSON and ARNOLD concur.

Rehearing denied January 4, 1940.